### AGASSIZ v. TREFRY et al.

(Circuit Court of Appeals, First Circuit. June 15, 1920.)

No. 1451.

Taxation ⬤⟲93 (1)—Acts insufficient to effect change of domicile for purpose of taxation.

Complainant, domiciled in Massachusetts, where he owned two residences, occupied by himself and family alternately in summer and winter, and who also owned an undivided interest, with his brothers, in the former home of his deceased father in Newport, R. I., where he and family occasionally spent a few weeks in summer, by announcing his intention to

⬤⟲For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

change his domicile to Rhode Island, removing his securities there, going there on tax day in Massachusetts each year, and voting and paying his personal taxes there, but without any actual change of residence, his houses in Massachusetts being kept open and occupied as before, and his family being in Newport but three weeks in the ensuing two years, *held* not to have effected a bona fide change of domicile, which exempted him from income tax in Massachusetts.

Aldrich, District Judge, dissenting.

Appeal from the District Court of the United States for the District of Massachusetts; George W. Anderson, Judge.

Suit in equity by Rodolphe L. Agassiz against William D. T. Trefry and others. Decree for defendants, and complainant appeals. Affirmed.

For opinion below, see 260 Fed. 226.

Stoughton Bell, of Boston, Mass. (Julian Codman, Coleman Silbert, and Putnam, Putnam & Bell, all of Boston, on the brief), for appellant.

William Harold Hitchcock, of Boston, Mass. (J. Weston Allen, of Boston, Mass., on the brief), for appellees.

Before BINGHAM and JOHNSON, Circuit Judges, and ALDRICH, District Judge.

BINGHAM, Circuit Judge. This is an appeal from a decree of the District Court for Massachusetts dismissing a bill in equity brought to restrain the tax commissioner of Massachusetts from collecting an income tax assessed against the appellant for the year 1917 under the Massachusetts Income Tax Law. St. 1916, c. 269.

The question in controversy is one of domicile. If the appellant was domiciled in Massachusetts any time between January 1 and June 30, 1917, he was subject to the tax. He claims that he was then domiciled in Newport, R. I. In the court below it was ruled and found that in 1917 he was domiciled in Hamilton, Mass. The question on this appeal is largely one of fact, namely, whether, on the evidence, the conclusion reached was right.

It is conceded that the appellant was domiciled in Hamilton down to the fall of 1914 or the spring of 1915. The question, therefore, reduces itself to this: Whether he took such a course of action and with such an intent as to change his domicile to Newport in the fall of 1914 or the spring of 1915. His domicile in Hamilton is presumed to continue until he acquired a new one; and he could acquire a new one in Newport only by actual residence there, coupled with the bona fide intention of abandoning his domicile in Hamilton and making Newport his permanent abiding place. As the appellant asserts that this change took place, he has the burden of establishing it.

The appellant's father was for many years a resident of Cambridge, Mass., but in 1896 or 1897 he became a resident of Newport, having acquired about the year 1872 a very substantial estate there as a summer home. He died in 1910, leaving a large estate, part of which consisted of the Newport house. He left three sons, whom he appointed trustees of his estate. The appellant's two brothers have

long been domiciled in Newport. One is a bachelor; the other is married, but has no children. The Newport house, subject to a contingent interest in Harvard College, passed under the father's will to the three sons. After the father's death in 1910, and prior to the appellant's alleged change of domicile in 1914 or 1915, the brothers, or some of their families, spent a part of each summer or fall at the Newport house, the place being opened by the bachelor brother and his servants; and the brothers, since the father's death, have shared the expense of running the place. There is no evidence in the case from which it can be found that after 1896 or 1897, when the father took up his domicile in Newport, the father's domicile was that of the appellant.

The appellant and his family spent a large part of the summers of 1910 and 1911 in the Newport house. Since then neither he nor his family have spent a summer there. For many years he has owned an estate in Hamilton, assessed for $35,000 to $45,000, and also a house in Boston, assessed for $60,000 to $70,000. His family, now consisting of a wife and an unmarried daughter, have habitually spent their winters in Boston and summers in Hamilton. In November, 1914, acting under the advice of counsel, the appellant wrote the assessors of Newport, notifying them that from and after that date he should claim his residence in Newport, and on March 16, 1915, he wrote the board of assessors at Hamilton that he had become a citizen of the city of Newport, where in the future he should pay his poll and personal taxes. Since 1915 he has described himself as of Newport. Down to that time he had paid taxes on his Hamilton real estate and on his personal property, including securities, in that town. The taxes paid there varied from $2,000 to $3,000 a year and the rate was from $10 to $12 on a thousand. In the spring of 1915 he registered as a voter in Newport and has since voted there. He bought a piece of real estate in Rhode Island, paying therefor something less than $1,000, to entitle him to certain voting privileges, and has since been taxed there for it. At or about this time he engaged a safety deposit vault in Providence, and moved his securities there. He opened an account in the Newport Trust Company, where he kept funds sufficient to meet his Newport expenses. In 1915, and since then, he has paid taxes in Newport on the third of his father's estate represented by him as trustee, and on his one-third interest in the furniture, boats, and carriages at the Newport house, which was assessed to him individually; but the taxes, if any, which he has paid on his securities since 1915, are negligible. He has also paid his federal income tax in the Rhode Island district.

In 1915 he occupied the Newport house three weeks in September, and was personally in Newport, though not at the Newport house, on the 1st of April, the Massachusetts tax day. During that year the Hamilton house was kept open from the latter part of May to the latter part of November, where his family and servants were practically all that time. His Boston house was kept open about six months during the winter, where his family resided, and where he stayed when he could and his business permitted.

In 1916 the appellant was in Newport April 1, over tax day, but neither he nor his family were at the Newport house that year. The house at Hamilton, however, was open and occupied by his family from the last of May until the 3d of September, and his Boston house was open and occupied that winter substantially the same as in the winter of 1915.

In 1917 the appellant was at the Newport house for about a week in August, and Mrs. Agassiz was there for a few days in September. He was also in Newport over April 1, the tax day in Massachusetts. That year the Hamilton house was open and occupied by the family from May 16 to September 12, and the Boston house in the winter as before.

In 1918 the appellant was in Newport over tax day, April 1, but not at the house. His family was not there at all. The Hamilton house was occupied by the family from May 4 until the 3d of September, and the Boston house was open and occupied as usual during the winter.

The appellant has large business interests in Boston, New York, and Michigan, in all of which places he spends a good deal of time each year.

After giving due consideration to all the evidence in the case, of which that above narrated constitutes the substantial part, we are unable to find that the appellant had a real abiding place in Newport, or that he intended in good faith to make it his permanent home. The evidence shows that he did not change in any degree his mode of living; that, on the contrary, he spent less time in Newport after the spring of 1915 than he did prior thereto and subsequent to his father's death; and that what was true of himself was equally true of his family. Judged by the conduct and mode of living of himself and family, Hamilton continued to be the place where he resided and maintained his home, while his trips to the Newport house were casual, of brief duration, and at such times and under such circumstances as to lend little, if any, weight to the idea that Newport was his permanent residence and intended to be such.

Being of the opinion that the appellant has failed to establish the facts essential to a change of domicile, we think the decree of the court below should be affirmed.

The decree of the District Court is affirmed, with costs to the appellees.

ALDRICH, District Judge (dissenting). Contrary to the majority opinion, I am drawn to the conclusion that Mr. Agassiz should be treated as having abandoned his Massachusetts domicile and as having established one in Newport, R. I.

This case involves a situation in which the man had several residences, as he properly might have. He had diversified business associations and interests. He had business offices in different places, including Boston, New York, and Michigan, where business with which he was connected was transacted. During the World War he was in the government service—on the copper committee which handled

copper for the government and the Allies—and this kept him much away from all his residences for a considerable part of the time during the period in question. He had a house on Commonwealth avenue in Boston, and abided there more than anywhere else; but there is no suggestion that Boston was his domicile.

Under such circumstances, while the purpose to change a domicile must be in good faith, and reinforced by some substantial acts, the question of domicile is, after all, in a considerable measure, within the control of the individual.

The purpose must, of course, be genuine, and not for evading taxes, and not with any wrongful intent in respect to obligations to governments or communities.

I give very little thought to refinements in arguments as to shades of differences between a wish and an intent, because Massachusetts does not question the purpose, or the general good faith, of Mr. Agassiz. Its sole ground for attempting to collect the tax in question is that the acts were not sufficient to amount to an abandonment of domicile.

I assume that, in order to throw up one domicile and to establish another, the purpose and the good faith must be supplemented by substantial acts and substantial changes, and in view of the purpose here, and the unquestioned good faith, I think there were sufficient substantial acts.

There was notice to the Massachusetts authorities, in 1915, as to what the man proposed to do, and it is apparent that he wished to do what he proposed.

Since he gave his notice to the Hamilton authorities, in 1915, the Hamilton authorities acquiesced in the proposed abandonment of domicile, or, as Judge Anderson finds, the Hamilton, Mass., authorities accepted the notice as sufficient, and assessed no personal tax against Mr. Agassiz until 1918, when the Massachusetts commissioner undertook to collect the state income tax for 1916 and 1917, or for 1917 and 1918, the record is not quite clear about the years, but that is of no particular consequence upon the main question.

There was full and adequate notice of the proposed change to the Rhode Island authorities in 1914. Mr. Agassiz moved his securities from his Massachusetts vaults to those of Rhode Island and retained no vaults in Massachusetts. He opened and continued a bank account in Newport, he has exercised the right of suffrage and has voted in Newport since the spring of 1915, and since then, for four years, he has made his federal income tax returns in Rhode Island, and paid his personal taxes in Newport.

By reason of his change the Newport assessors increased the assessment upon his interest in the father's trust estate, and he has paid that tax. He was in Newport and Rhode Island to a considerable extent, and it does not weaken his right to say that he was there with the idea of effectuating his purpose.

The place where he sought to establish his domicile was the place of his father's domicile; it was the place of his youth, and of his young manhood, or, in Mr. Agassiz's own words, "I was brought up

in Newport, that is, always from a small boy," and with it, in a large sense, were associated the traditions and the fame of his distinguished father, and, under the circumstances, his purpose to return would seem, not only natural and reasonable, but laudable.

The purpose to return to the father's last domicile being genuine, and the purpose being effectuated by substantial changes in property conditions, like transferring property from one jurisdiction to another, and by a change of voting place, and by some abiding, the question of domicile does not necessarily depend upon any given length of actual abiding.

As a man's life advances, he may change his view as to where he wants the domicile of his later life—of his declining years. He may prefer the last ancestral home and domicile, in which he has retained his legal interest, to that of the scenes of the country home and the polo fields of the younger years. He may have very strong convictions about it, and, if he has, the law of domicile is not so rigid, or so arbitrary, as to require him to pull up all his stakes in the one field and to put them all down in another.

The fact that Mr. Agassiz sought the advice of counsel as to what to do is not to be taken against him. It would be quite the natural thing for a man who is not a lawyer, a man with official duties, a man of large business affairs, with business offices and business connections in different states and cities, with different residences and abiding places, to seek the advice of a lawyer, with the view of ascertaining what was necessary to accomplish, in a legitimate way, the purpose which he had in mind.

It is apparent that Mr. Agassiz had strong convictions about the question of domicile, and a careful reading of his testimony shows that his purpose was prompted by a deep, abiding, and commendable sentiment. There is nothing in the testimony to justify any question, or any hesitancy, about the good faith of his purpose.

The presumption as to an old domicile—whether it is a presumption of law or of fact—is of very little weight. It is quite fictional, and, when mingled with substantial acts, based upon unquestioned good faith, and a commendable purpose, it readily yields whatever weight it has to the rightful circumstances of a given case. The same is true of the suggested rule of burden of proof, which at the most is a mere shadow, whose actual weight, if any, no one has ever discovered.

In view of the purpose in this case, I think the domiciliary law is not so absolute as to require a critical analysis, or a critical minimization of the acts, the changes, and the counting of days and months of abiding in this place and that.

This is not a tricky case, like one to avoid military or other government obligations. There is no general question of public policy involved in a domiciliary situation with the characteristics present here. There are no unyielding vested public or private rights.

In the fair sense, no community, no municipality, and no government would be wronged by the change of domicile sought; therefore

I think Mr. Agassiz should have his domicile where he wants to have it. I think the purpose and the very substantial acts justify such a conclusion.