In re Alleged Insanity of Helen Calhoun Cash.

Gen. No. 9,734.

Opinion filed February 13, 1942. Rehearing denied March 25, 1942.

HENRY W. DIERINGER, of Chicago, for appellant.

CHARLES G. SEIDEL, State's Attorney, and IRVING B. CAMPBELL, of Chicago, for appellee; W. BEN MORGAN, Special Assistant State's Attorney, of counsel.

MR. PRESIDING JUSTICE HUFFMAN delivered the opinion of the court.

It appears that Helen Calhoun Cash on April 28, 1938, was adjudged insane by the county court of Monroe county, Florida, and committed to the asylum. This hearing apparently followed a temporary incarceration in jail in that State. Following this, she sent a rather disconnected and unintelligible telegram to her sister, Dr. Henrietta Calhoun Horner, of Albany, New York, requesting that she come to Florida at once. The sister and Miss Keeler, a friend of Mrs. Cash, went to Florida, where they succeeded in securing the release of the person of Mrs. Cash and returned with her to Chicago, on or about May 3, 1938. On the night of their arrival in Chicago, they registered at the Stevens Hotel. On the next day, Mrs. Cash was removed to the Parkway Sanitarium in Chicago. On advice of a doctor, she was removed from the Parkway Sanitarium to Resthaven Sanitarium in Elgin, in Kane county. She was accompanied by her sister, Dr. Horner, Mr. McConnell, a friend, and another doctor. Here she remained until May 19, 1938, when a petition was filed in the county court of Kane

county alleging her insanity. Subsequently a hearing was conducted before the county court, by way of commission. The commission found the patient to be insane, whereupon, she was committed to the Resthaven Sanitarium. Thereafter and on September 1, 1938, a petition on her behalf was filed in the county court of Kane county attacking the jurisdiction of that court; alleging that she was a resident of the county of Cook; and that she was not "found" in Kane county within the meaning of the word as used in the statute. Upon hearing, the county court of Kane county dismissed the above petition. An appeal was taken from this order to the circuit court of Kane county. On a hearing before the circuit court, the petition was dismissed. An appeal was taken from that order to this court, where the judgment of the circuit court was reversed *pro forma* and the cause remanded because of the failure of the appellee to file briefs, pursuant to the rules of this court. Subsequently, the petition in amended form, was again heard by the circuit court of Kane county, where the circuit court found that the county court of Kane county had jurisdiction in the cause; that the proceedings were lawful; that Helen Calhoun Cash was properly "found" in Kane county within the meaning of the statute, and denied the prayer of the amended petition. It is from this judgment that this present appeal is prosecuted.

It appears that Mrs. Cash resided in the State of Texas for some years prior to the time in question, and that subsequent to her residence in Texas, she lived in Florida. Her husband, who was deceased, had been a vice-president of the Standard Oil Company of Indiana. Apparently their actual domicile was subject to change. However, it appears that they owned a home in this state, although during trips to Illinois, she lived at Hotels in Chicago.

It does not appear that any force or trickery was used in taking her from the Parkway Sanitarium to

the Resthaven Sanitarium in Elgin. Her mental condition was such as to require constant attendance. She states that she did not like the institution in Chicago in which she was first placed, but found the Resthaven Sanitarium to be a very nice place. Here, she was permitted to go down town in Elgin in company with an attendant. She had been at this institution for approximately two weeks prior to the proceedings had in this case. Her sole contention is that the court lacked jurisdiction to commit her, claiming she was not found in Kane county within the meaning of that word as used in the statute.

Section 3 of the act in question (Lunatics—ch. 85, sec. 3, Ill. Rev. Stat. [Jones Ill. Stats. Ann. 77.003]) provides that, when any person shall be, or supposed to be, insane, any reputable citizen of the county in which such patient resides or is "found" may file a statement with the clerk of the county court for an inquest as to the sanity of such person.

The words of a statute are to be construed in the sense in which they best harmonize with the subject of the enactment, and the object the legislature had in view. So accordingly, the construction ought to be with reference to the object to be accomplished or attained by the act, and the words used should be construed and interpreted in a manner most agreeable to such object and intention.

It is perhaps in the interpretation of general words and phrases that the principle of adapting the meaning thereof to the subject matter in reference to which the words are used, finds its most frequent application. It is generally found that words or expressions of such character are considered more or less elastic and admit of restriction or expansion to suit the subject matter with regard to which they are used.

Mental infirmity admits of a wide variety of conditions, and of varying degrees of care, restraint and supervision, depending upon the individual case. Here, appellant apparently had no one to look after her other

than her sister, Dr. Horner of Albany, New York, and acquaintances of previous years. The proper restraint of an alleged lunatic is of vital concern to the public generally. It has been said that such a proceeding was on behalf of the public, and that no one is wholly a stranger thereto. *People v. Janssen,* 263 Ill. App. 101. The fact that such proceedings are usually instituted upon the initiative of a member of the family, by no means tends to alter the purpose and design of the statute as to the rights of the general public in such cases. The interest of the petitioner in a case of this character is but negligible and when an inquest touching upon the sanity of a person is once begun, the interest of the petitioner becomes subordinate to that of the public.

Lunacy statutes should be liberally construed to the effect that no insane person may be permitted to remain at large if the necessity of the case requires they should be restrained.

The court which conducted the proceedings had nothing to do with appellant's coming to Kane county. She was present in that county, present at the inquest, and determined unfit to be at large. A person may be found elsewhere than in the place where he resides. The statute provides for an inquest wherever the patient may reside or is found.

In view of the foregoing observations as to the purposes and intent of the act in question, as well as its intended operation, the court is of the opinion that Mrs. Cash was found within Kane county within the meaning and intent of the word "found" as used in the statute, and that the county court of said county had jurisdiction of her person. The judgment is therefore affirmed.

Appellee filed motion to dismiss the appeal which was taken with the case. Since the judgment is affirmed, it has not been deemed necessary to consider the motion.

*Judgment affirmed.*