**DIXON v. STEELE, Warden.**

Nos. 6900, 7481.

United States District Court
W. D. Missouri, W. D.

June 28, 1951.

On Second Petition May 6, 1952.

Sam M. Wear, Dist. Atty., Harry F. Murphy, Asst. Dist. Atty., Kansas City, Mo., for United States.

Charles M. Wantuck, Springfield, Mo., for defendant Charles A. Dixon.

DUNCAN, District Judge.

This is the second petition for writ of habeas corpus this petitioner has filed. The petitioner charges that:

"* * *. he is unjustly and unlawfully detained and imprisoned by color of authority of the United States in the custody of Ivan W. Steele, Warden, at the United States Medical Center for Federal Prisoners, Springfield, Missouri"

under a commitment issued by the United States District Court for the District of Kansas, under the authority of § 4246, Title 18 U.S.C.A. He alleges that said section is unconstitutional and that his retention thereunder is in violation of his constitutional rights. The petition was granted, and the matter came on for hearing on April 24, 1952 in the Southern Division of the Western District of Missouri, at Springfield. Evidence was heard and the cause taken under consideration.

The petitioner was represented by able counsel, who prepared the application. The first petition (No. 6900) was filed on May 1, 1951, by the petitioner himself, or at least it was so indicated. In substance he made the same allegations as the present application.

Upon a full and complete hearing of that application (No. 6900) the court found that the petitioner was insane and incapable of knowing the difference between right and wrong at that time; that the evidence tended to show that the applicant was insane at the time he committed the offense for which he was being detained, and remanded the case to the District Court by which he was committed, for further proceedings in connection therewith.

The reasons for the court's action were more fully expressed in a memorandum opinion filed June 28, 1951 which was introduced in evidence in this case (and in so far as applicable, adopted as a part of this opinion); along with all other docu-

ments and records in case No. 6900 and made a part of the record in this case.

**I.**

"In The United States District Court
For The District Of Kansas

United States Of America
v. } No. 2840
Charles A. Dixon

Journal Entry

On this 15th day of September, 1951, at Wichita, Kansas, the above-entitled matter comes on for hearing pursuant to the court's order herein made September 10, 1951, setting this matter for special hearing on this 15th day of September, 1951, plaintiff appeared by V. J. Bowersock, Assistant United States Attorney for the District of Kansas, and the defendant, Charles A. Dixon, appeared in person and by his employed counsel, Harry Gillig, Jr., and Clyde Wendelken, Jr.

"All parties announce ready for trial and it appearing to the court that a question exists relative to defendant's present mental condition, this hearing proceeds with reference to defendant's present mental condition, and, thereupon, plaintiff directs the court's attention to the court's file in the above-entitled cause, and, thereupon, Dr. Charles F. Smith, Chief Psychiatrist at the Medical Center for Federal Prisoners, Springfield, Missouri, being present, is duly sworn and orally testifies concerning an examination made by him of defendant and concerning defendant's present mental condition. Defendant and his counsel offer no evidence.

"After reading and examining the court files and after hearing the oral evidence of Dr. Charles F. Smith, Psychiatrist, relative to defendant's present mental condition and being fully advised in the premises, the Court finds that the defendant, Charles A. Dixon, was indicted September 17, 1948, and charged with mailing obscene nonmailable postal cards and letters. That on May 16, 1949, said defendant appeared with counsel before the Honorable Arthur J. Mellott, Chief Judge of the above-entitled court and entered his plea of guilty to said indictment and that sentence was suspended upon such plea and defendant was placed on two years' probation. That thereafter and on January 18, 1950, said defendant appeared before this Court and at said time defendant's probation was revoked and defendant was sentenced to serve a term of five years on Count One and imposition of sentence on Counts Two to Seven, inclusive, was suspended and de-

Copy of the record entry [1] of the United States District Court for the District of

fendant placed on probation for a period of two years to begin upon his release from serving a sentence under Count One. That the Medical Center for Federal Prisoners at Springfield, Missouri, was designated as defendant's place of confinement and he was committed to said institution.

"On or about August 1, 1950, the Attorney General of the United States, in accordance with the provisions of federal law, filed a certificate stating that defendant had been found mentally incompetent by a Board of Medical Examiners at the Medical Center for Federal Prisoners, Springfield, Missouri, and attached copy of psychiatric report and certificate made on behalf of said Board of Medical Examiners by Doctors E. C. Rinck, L. C. Roucok and J. E. Sartin; that upon the filing of said certificate, defendant was returned to this court under writ and order of the Court and on the 5th day of September, 1950, at Wichita, Kansas, hearing was held before the Honorable Arthur J. Mellott, Chief Judge of this court, relative to defendant's then mental condition at which hearing defendant appeared in person and by his court-appointed counsel, Wayne D. Coulson, Ralph E. Gilchrist and E. E. Sattgast. At the conclusion of said hearing, Judge Mellott set aside defendant's plea of guilty entered on May 16, 1949, and granted defendant a new trial. That on the 5th day of September, 1950, Judge Mellott found the defendant to be mentally incompetent at such time and by reason thereof committed him to the custody of the Attorney General or his authorized representative until he shall become mentally competent to stand trial or until the pending charge against him was disposed of according to law. That defendant was thereafter returned to the Medical Center for Federal Prisoners at Springfield, Missouri, where he remained until pursuant to a petition for a writ of habeas corpus filed by him in the United States District Court for the Western District of Missouri, Western Division, he was taken before the Honorable R. M. Duncan, District Judge for the District of Missouri, before whom a hearing was held on his petition for a writ of habeas corpus in such proceeding under date of June 28, 1951, Judge Duncan, among other things, found 'from the petitioner's own testimony and that of the medical authorities of the institution (referring to Springfield Medical Center), it is clearly apparent to the

Kansas, made a part of Respondent's answer filed in this court on April 24, 1952 shows that on September 10, 1951 the United States District Court for the State of Kansas specially set the case of "United States of America v. Charles A. Dixon" then pending in that court for hearing on September 15, 1951; that the United States was represented by the Assistant District Attorney, and the defendant appeared in person and by his employed counsel; all of the parties announced ready for trial, and the order further shows that:

"* * * a question exists relative to defendant's present mental condition, this hearing proceeds with reference to defendant's present mental condition, * * *".

Following that hearing, at which the defendant introduced no evidence, the court found that at said time (September 15, 1951) that the defendant:

"* * * is so mentally incompetent that he cannot cooperate with his counsel in the trail of the above action. That he cannot distinguish now between right and wrong. That he does not now fully understand the nature of the charges and proceedings pending against him and that by reason thereof, he should be committed to the custody of the Attorney General, or his authorized representative pursuant to the provisions of Title 18, U.S.C.A. § 4246, until he shall become mentally competent to stand trial or until the pending charges against him are disposed of according to law.

"The court further finds that the defendant's contention that he was insane at the time the offense or offenses

---

Court that the defendant was at that time and still is, of unsound mind and not mentally qualified to advise with counsel with respect to his offense' and after expressing the opinion that defendant was insane at the time he was alleged to have committed the offense for which he has been indicted, Judge Duncan ordered that defendant be returned to the United States District Court for the District of Kansas for such further proceedings as said Court may determine.

"The Court further finds from the record in this case and from the testimony of Dr. Charles E. Smith that at this time, September 15, 1951, the defendant, Charles A. Dixon, is so mentally incompetent that he cannot cooperate with his counsel in the trail of the above action. That he cannot distinguish now between right and wrong. That he does not now fully understand the nature of the charges and proceedings pending against him and that by reason thereof, he should be committed to the custody of the Attorney General, or his authorized representative pursuant to the provisions of Title 18 U.S.C.A. § 4246, until he shall become mentally competent to stand trial or until the pending charges against him are disposed of according to law.

"The Court further finds that defendant's contention that he was insane at the time the offense or offenses were committed by him as related in said indictment is an affirmative defense, and the Court concludes as a matter of law that such defense only can be deter-

mined upon a trial of the above action, and that this Court has no authority under the law to determine at this time the question of defendant's sanity at the time he was alleged to have committed the offenses. The Court further finds that the provisions of 24 U.S.C.A. § 211 et seq. cited and relied upon by defendant's attorneys in support of their motion for an order of this Court directing defendant's confinement in the Saint Elizabeth Hospital are not applicable to this case and that defendant's motion for confinement in Saint Elizabeth Hospital should be overruled.

"It Is, Therefore, By The Court Considered, Ordered And Adjudged that the defendant, Charles A. Dixon, be and he is hereby committed to the custody of the Attorney General or his authorized representative for confinement and care until the sanity or mental competency of said defendant shall be restored and said defendant shall become mentally competent to stand trial in the above-entitled action or until the above-entitled action now pending against him is disposed of according to law.

"It Is Further Ordered that the Clerk deliver a certified copy of this judgment and commitment to the United States Marshal or other qualified officer and that such copy serve as the commitment of said defendant.

"Dated this *26th* day of *September,* 1951, at Wichita, Kansas.

"(Signed) Delmas C. Hill

Delmas C. Hill, Judge"

were committed by him as related in said indictment is an affirmative defense, and the Court concludes as a matter of law that such defense only can be determined upon a trial of the above action and that this Court has no authority under the law to determine at this time the question of defendant's sanity at the time he was alleged to have committed the offense."

Pursuant to such finding the defendant was again:

" * * * committed to the custody of the Attorney General or his authorized representative for confinement and care until the sanity or mental competency of said defendant shall be restored and said defendant shall become mentally competent to stand trial in the above-entitled action or until the above-entitled action now pending against him is disposed of according to law."

The evidence in the hearing on this application shows that the applicant's mental condition has not improved during the past year, and that it is unlikely that his mental condition will improve in the future. There seems to be no question in the minds of the psychiatrists who have examined him, that his condition is permanent, and that he never will be able to advise with counsel or to clearly appreciate and understand the difference between right and wrong.

■ It has now been three and one-half years since he was first indicted. It is very obvious from the undisputed record that he has been insane at least since the time of his first arraignment, with no evidence of improvement. If the applicant was insane at the time he committed the offenses, as I have stated in the first Memorandum Opinion, he was incapable of violating the law, and is guilty of no offense.

If § 4246, Title 18 U.S.C.A., is valid, then an insane person charged with a criminal offense can be imprisoned for the rest of his life without any trial as to the issue of whether or not he committed an offense, but only as to the question of whether or not he was sane or insane at the time of the hearing.

In this case it seems clear that there is no dispute as to the question of applicant's insanity, and little dispute as to the fact that it will continue so long as the man shall live. For that, he is confined without term in Federal custody—confinement not for a crime, but for insanity.

■ This question was fully discussed in the Memorandum Opinion in the first case, filed on June 28, 1951. There is no question about the right of the Congress to restrain insane persons in those jurisdictions over which it retains complete legislative authority, such as the District of Columbia and the Territories, and over such groups as it exercises exclusive legislative authority, but it is difficult for me to conceive of Federal constitutional authority to invade the rights of the states in the confinement of its citizens on the ground of insanity.

Suggestion has been made that in view of the fact that the party is being held in custody for the violation of a Federal law, such custody may continue until the case is disposed of, although the accused person may be hopelessly insane. With that view I cannot agree.

■ It is my conclusion that the right to confine persons for insanity is reserved to the states, and that the statute, in so far as it attempts, if it does, to confer upon a court the right to commit an accused person to the United States authorities for imprisonment for an uncertain, indefinite time pending restoration to his sanity or until the charge against him is otherwise disposed of, is outside the constitutional authority of the Congress, and that the applicant in this case is being illegally restrained of his liberty, and is entitled to be released.

It is therefore ordered, adjudged and decreed that the application for the writ of habeas corpus be and it is hereby granted, and the respondent is ordered to release the applicant from further custody.

Memorandum Opinion Filed June 28, 1951.

This matter is before the court on petitioner's "Petition for writ of habeas corpus." He is confined in the United States Medical Center for Federal Prisoners at Springfield, Missouri. He prepared his own petition, and, typical of such petitions, it is lacking in formality. In passing upon such petitions, the court must look to the substance rather than to the form, and often read into the petition that which the petitioner intended to say. So it is with this petition.

Briefly, he alleges that he is confined in the Medical Center under §§ 4244–4246,[1] Title 18 U.S.C.A., to be confined "until cured of his insanity * * * or until the indictment was disposed of according to law * * *".

He further alleges that he "has now sufficiently recovered his sanity to know the difference between right and wrong and to be able to conduct himself in perfect decorum under all laws and he is now able to consult with counsel and assist in his own defense."

He asks: "(1) that he be returned to the trial court for trial upon the indictment; or (2) that as he was incompetent at the time of crime, the indictment be dismissed and he be released; or (3) that he may be permitted, because of his physical disability (caused by war service for which he receives a Government pension of $111.00 per month) to obtain hospitalization and care and treatment in a private institution at his own expense within his own home town or state should this court find that any additional treatment be required." The facts are not in dispute.

The petitioner, 50 years of age, a veteran of World War I, is confined in the United States Medical Center for Federal Prisoners at Springfield, Missouri, under a commitment issued by the District Court for the State of Kansas, under Section 4244, Title 18 U.S.C.A.

1. "§ 4244. Mental incompetency after arrest and before trial

"Whenever after arrest and prior to the imposition of sentence or prior to the expiration of any period of probation the United States Attorney has reasonable cause to believe that a person charged with an offense against the United States may be presently insane or otherwise so mentally incompetent as to be unable to understand the proceedings against him or properly to assist in his own defense, he shall file a motion for a judicial determination of such mental competency of the accused, setting forth the ground for such belief with the trial court in which proceedings are pending. Upon such a motion or upon a similar motion in behalf of the accused, or upon its own motion, the court shall cause the accused, whether or not previously admitted to bail, to be examined as to his mental condition by at least one qualified psychiatrist, who shall report to the court. For the purpose of the examination the court may order the accused committed for such reasonable period as the court may determine to a suitable hospital or other facility to be designated by the court. If the report of the psychiatrist indicates a state of present insanity or such mental incompetency in the accused, the court shall hold a hearing, upon due notice, at which evidence as to the mental condition of the accused may be submitted, including that of the reporting psychiatrist, and make a finding with respect thereto. No statement made by the accused in the course of any examination into his sanity or mental competency provided for by this section, whether the examination shall be with or without the consent of the accused, shall be admitted in evidence against the accused on the issue of guilt in any criminal proceeding. A finding by the judge that the accused is mentally competent to stand trial shall in no way prejudice the accused in a plea of insanity as a defense to the crime charged; such finding shall not be introduced in evidence on that issue nor otherwise be brought to the notice of the jury."

"§ 4246. Procedure upon finding of mental incompetency

"Whenever the trial court shall determine in accordance with sections 4244 and 4245 of this title that an accused is or was mentally incompetent, the court may commit the accused to the custody of the Attorney General or his authorized representative, until the accused shall be mentally competent to stand trial or until the pending charges against him are disposed of according to law. And if the court after hearing as provided in the preceding sections 4244 and 4245 shall determine that the conditions specified in the following section 4247 exist, the commitment shall be governed by section 4248 as herein provided."

On May 4, 1951 this court heard evidence offered by petitioner and respondent in the United States District Court for the Southern Division of the Western District of Missouri at Springfield. After hearing the evidence, the court took the matter under advisement.

Subsequent to the hearing, an attorney was appointed for the petitioner, and he has favored the court with a brief. At the conclusion of the hearing, the court dictated into the record, findings of fact and conclusions to the effect that the prisoner was at that time of unsound mind and incapable of co-operating with counsel in a trial for the offense with which he is charged.

The facts are that shortly prior to January 10, 1949, petitioner was charged with violating the postal laws by writing scurrilous letters concerning the business of beauty operators, a business with which he had been connected prior to the proceedings, and at the time of the commission of the alleged violation of the postal laws.

On January 10, 1950, he was indicted, and upon arraignment, his case was continued to May 16, 1950. It is probably from the record of the proceedings at that time that the court suspected his mental incapacity. On May 16 he was arraigned, counsel was appointed for him, and after consultation with him, counsel advised the court that in their opinion the defendant was incapable of properly assisting in his defense. In view of the court's prior experience with petitioner, the court was inclined to agree with the suggestion of counsel.

The District Attorney at that time suggested that the petitioner be committed to the United States Medical Center for Federal Prisoners at Springfield for examination, but before the request was acted upon, the petitioner on the same day entered a plea of guilty. Whereupon, sentence was suspended and the defendant placed on probation for a period of two years.

Following his release on probation, Dixon continued his crusade for "the protection of beauty shops, corrupt minor courts,

the rights of a member of the Republican Party, etc." and on June 2, he was committed to jail for 24 hours, and upon his discharge, the court admonished him concerning the repetition of his conduct. However, he continued to write the objectionable letters as he had theretofore done, and on January 18, 1950, his probation was revoked and he was committed to the custody of the Attorney General for a period of five years on the first count, and two years on each of six additional counts, and as to said six counts, sentence was suspended and he was placed on probation, to begin at the expiration of the sentence on the first count. He was committed to the United States Medical Center for Federal Prisoners at Springfield.

Thereafter an examination by the Neuro-Psychiatric Board revealed that he was suffering from a paranoic type of reaction due to arteriosclerosis and senile changes, and was psychotic. This information was communicated to the court, and on September 5, 1950, the matter came on for hearing before the court at Wichita, in the State of Kansas, upon the issue as to the mental capacity of the defendant at the time of his sentence, and at the time of the hearing. The United States was represented by the Assistant United States District Attorney for the State of Kansas, and the defendant was present in person and by his court appointed counsel, Wayne D. Coulson, Ralph E. Gilchrist and E. E. Sattgast.

The report of the Psychiatric Board was introduced in evidence, and Dr. L. G. Roucek, a member of the Medical Staff of the Medical Center testified concerning defendant's mental condition. The defendant offered no evidence.

The court found that the defendant was mentally incompetent on May 16, 1949, the day on which he entered a plea of guilty, and that he was mentally incompetent on January 18, 1950, the date of the revocation of his probation and of his sentence, and by reason thereof, the court set aside the sentence, his plea of guilty, and granted a new trial.

The court further found that he was at said time, (September 5, 1950) mentally

incompetent and that he should be committed to the custody of the Attorney General or his authorized representative under the authority of said Section 4244 until he should become mentally competent to stand trial or until the pending charges against him were disposed of according to law. The defendant was thereupon committed to the United States Medical Center as heretofore stated, where he has remained to this date.

The transcript of the testimony does not reveal all of the testimony given by him at the hearing on his writ. The court closely examined the petitioner and elicited from him the facts concerning the background of his unlawful letter writing. It appears that he is suffering from the hallucination that some subversive influences, probably communistically inspired, are attempting to destroy the beauty shop industry. He was quite emphatic in his denunciation of such influences, and his letter writing was an attack upon this imaginary influence.

Upon other subjects, as will be revealed by the record, the petitioner was apparently rational. He testified to his former places of residence, the residence of his mother, the receipt of $111.00 per month as disability benefits from the Veterans Administration, and the approximate amount of funds he then possessed.

From the petitioner's own testimony and that of the medical authorities of the institution, it was clearly apparent to the court that the defendant was at that time and still is, of unsound mind, and not mentally qualified to advise with counsel with respect to his offense.

The question of his mental condition at the time of the offense was not before the sentencing court, and no finding was made with respect thereto. It cannot be considered by this court in this proceeding, but from a reading of the record of the medical testimony and the inferences to be drawn from defendant's conduct at the time of his original arraignment, and the time of the sentence, the inference is strong that the same condition existed at the time of the commission of the offense as now exists. Dr. Paul Baker, a psychiatrist at the Medical Center testified:

"It was immediately apparent to the psychiatrists who interviewed him that he was mentally ill a fact which apparently had been overlooked in court, and the diagnosis made by the examining psychiatrist was of a paranoid psychosis due to cerebral arteriosclerosis, hardening of the arteries of the brain, as we regard, a case that required prolonged hospitalization, and in our interview this last Friday afternoon, (May 4) we found no reason to dispute that diagnosis and still believe that to be the case."

The Doctor further testified in response to the question:

"What would you say his chances are of becoming so he would know right from wrong and be able to cooperate with counsel and be removed from the psychotic stage?"

"A. I wish I could accurately state. At present all I can say is that he is mentally ill and with the prognosis that I would make, he would need some sort of institutional custodial care."

The Doctor further stated:

"However, I would like to differentiate between arteriosclerosis and senile changes. We don't consider them essentially senile which would mean organic destruction of brain tissues. Sometimes these arteriosclerotics are shortlived and on other occasions be quite permanent and prolonged."

Dr. Robert Lincoln, another psychiatrist at the institution, in response to a question by Mr. Wear, the United States District Attorney, as to whether or not in his opinion the petitioner might be cured or be able to cooperate with counsel and be removed from a psychotic state, answered:

"That is a difficult question to answer but I would say that he would be in need of further hospitalization."

"Q. You think his condition is such now that he could not cooperate with counsel? At the present time. Wouldn't know right from wrong? A. That is correct."

In response to a question by the court as to whether or not the doctor had an opinion as to the extension or duration of the ailment, the doctor answered:

"The only thing I can say about the duration of the ailment is from the history as presented by other doctors and documents, and so forth, that are in his record; apparently it has extended from at least the time that the original offense was committed."

Both doctors testified that he had shown some improvement since he had been at the institution.

If the petitioner's mental condition at the time of the commission of the offense was as impaired as it is now, and as the court found it to be at the time he was committed on September 5, he would be classified as mentally irresponsible and not liable for the commission of an offense.

No question is raised by the petition, or by the petitioner's counsel in his brief as to the sufficiency of the notice of the hearing, or of the fact of his insanity at the time of his commitment. In other words, there is no question as to denial of due process of law as to the nature or extent of the hearing under which he was ad- judged to be incompetent, for which reason he was committed.

Petitioner's prayer is in the alternative. First, that he be returned for trial upon the indictment, or second, that a determination as to whether or not he was incompetent at the time the alleged offense was committed, or that he be permitted, because of his present physical condition, to be returned to the state of his residence for hospitalization at his own expense in a private or public institution.

No question was raised in the petition as to the constitutionality of the Act under which the petitioner was committed, and for that reason, in its brief the Government insists that the court may not now consider that question. However, the question was raised by the court at the time of the hearing and by the petitioner in his brief. So far as the pleadings are concerned, I think the question is one that could well be considered, if it were neces- sary to a determination of the petition, but under the facts as I view them, it is not essential for such a determination.

The Government has submitted to the court a well prepared and well reasoned brief with respect to the constitutionality of the statute and the right of the United States to hold the petitioner who has not been convicted of any offense.

█ If it should appear that a prisoner is being held in violation of his constitutional rights, although through lack of knowledge of the law or of technical pleading, he has not properly raised the question, the court should nevertheless consider it in a determination of the petitioner's rights.

The petitioner prays among other things, for a determination of the question as to whether or not he was insane at the time the alleged offense was committed. He also alleges that he is now mentally capable of advising with counsel and standing trial.

It seems to me that there can be no question but that if the petitioner was of unsound mind at the time the offense was committed, legally he committed no offense, and this question should be determined. This issue presents an entirely different legal situation than if the petitioner became insane after the commission of the offense, and before he was arraigned, and the indictment came on for trial.

█ In the latter case, it would be a question of whether or not he might be restored to his sanity so that he could be tried for the offense with which he is charged. In the former, if he was insane, he never committed the offense and a court would have no legal right to commit him to an institution simply because he was insane.

█ Of course, this court has no jurisdiction to determine the question of his sanity at the time the offense was committed. That lies wholly within the jurisdiction of the court in which the charge against petitioner is pending.

If I am in error in my reasoning, then an insane person who commits an offense for which he could not be held legally lia-

ble, might be required to spend a lifetime in prison, simply because he is insane. I know of no authority in the Federal system for such action.

If, upon a further hearing it should be determined that the petitioner was sane at the time he is alleged to have committed the offense, but became insane thereafter and before he was arraigned, and is still insane, then the question of whether or not he may be confined in an institution until he shall recover his sanity, or the charge be otherwise disposed of, might present a constitutional question as to the right of the court to commit indefinitely for such purpose, but that is not before the court at this time.

It would seem to me that where one is charged with an offense and the question of insanity or mental incapacity is raised under the sections in question, § 4244 et seq., Title 18 U.S.C.A., it should be determined whether or not such person was insane at the time the offense was committed, as well as at the time of the arraignment, before he is committed for an indefinite period of time, which may amount to a term without limitation.

It is true that the mental strain incident to the preparation of trial and anxiety over the consequences of a violation of the law might render one mentally incompetent, yet in the great majority of cases, if one is insane at the time of the arraignment, which ordinarily is soon after the commission of an offense, there would be a strong inference of insanity at the time the offense was committed. In view of the evidence in this case, there would seem to be such an inference with respect to this petitioner.

Therefore, in view of the allegations of the petitioner that he was insane at the time of the commission of the alleged offense, his petition is sustained and he is remanded to the custody of the United States Marshal for the Western District of Missouri, to be returned to the United States District Court for the State of Kansas, for such further proceedings as that court may determine.