STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v. FRANK CARALLUZZO, DEFENDANT-APPELLANT.

STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v. JOSEPH CARALLUZZO, JR., DEFENDANT-APPELLANT.

Argued January 9, 1967—Decided April 17, 1967.

*Mr. David L. Horuvitz* argued the cause for appellants.

*Mr. N. Douglas Russell,* Assistant Prosecutor of Cumberland County, argued the cause for respondent (*Mr. Joseph Tuso,* Prosecutor of Cumberland County, attorney).

The opinion of the court was delivered

PER CURIAM. These appeals challenge judgments of the Cumberland County Court: 1) ordering that appellants be confined to a state institution under *N. J. S. A.* 30:4–82, and 2) determining that appellants do not have the capacity to stand trial as defendants under indictments returned against them.

Frank Caralluzzo was indicted for murder and two counts of atrocious assault and battery in 1962 by the Cumberland

County Grand Jury, and his brother Joseph Caralluzzo, Jr. was indicted at the same time for murder and one count of atrocious assault and battery. Subsequently, the trial court on request of the prosecutor held a hearing under *N. J. S. A.* 30:4–82. This section provides that a County or Superior Court may hold a hearing on its own motion to determine whether a person under indictment should be committed to a state institution for care and treatment because of his mental condition. The court determined that both defendants were imbeciles and should therefore be committed to a state institution for care and treatment. When appellants first challenged this determination in this Court, we remanded to have a different trial judge determine whether appellants had the capacity to stand trial on the indictments. The trial court sitting without a jury found that they did not. The present two appeals followed.

It is undisputed that both appellants are imbeciles with mental ages of about six years (although both have physical ages in the twenties). Their condition of mental retardation was testified to and established by several experts in psychology and psychiatry at the hearing held under *N. J. S. A.* 30:4–82. The experts based their opinions on observations of and interviews with appellants. Similar testimony was introduced at the second hearing after the remand to determine capacity to stand trial to show that appellants were not able to comprehend their position or consult with counsel. However, at this hearing some expert opinion was offered on behalf of appellants that the boys although imbeciles could meet the necessary minimum level of understanding.

██ An accused under a criminal indictment is unfit to stand trial if he has a condition of mental illness or retardation which prevents him from comprehending his position and from consulting intelligently with counsel in the preparation of his defense. *State v. Lucas,* 30 *N. J.* 37, 72–74 (1959); see *N. J. S.* 2A:163–2. Our review of the record shows considerable testimony that the severely limited intelligence of appellants prevents them from understanding their

position and from consulting with counsel in their defense, and there is no reason for us to disturb the finding of the trial court which rests on sufficient evidence that appellants are not able to stand trial. See *Close v. Kordulak Bros.*, 44 *N. J.* 589, 598–599 (1965); *State v. Johnson*, 42 *N. J.* 146, 162 (1964).

A determination that persons are unfit to stand trial is persuasive on the question of whether they should be confined under *N. J. S.* 30:4–82. However, this statute only authorizes confinement of persons who are a hazard to themselves or others, persons who cannot fend for themselves. *Aponte v. State*, 30 *N. J.* 441, 455 (1959). It is not a blanket authorization to commit persons with any condition of mental illness or mental retardation.

While we think that there was sufficient evidence to show that appellants were a hazard to themselves or others and required institutional supervision, the trial judge excluded evidence by Police Officer Jost on the hazardous behavior of appellants, and also excluded testimony by Dr. Brancale and other experts which might have shown in detail why and how the appellants were a hazard to themselves or others. The trial judge apparently believed that a finding that the appellants were imbeciles was sufficient in itself regardless of the question of hazard to self or others. Therefore, we cannot be sure that the trial judge made the finding required by a proper interpretation of the statute.[1] Since the statute authorizes the confinement of a person and loss of his freedom, the courts must be careful to see that the statute is not used as a catch-all device to punish persons under indictment without an adjudication of guilt at a criminal trial. The

---

[1] At the time of the hearing on June 6, 1963, *N. J. S. A.* 30:4–82 authorized commitment of persons under indictment who are found to be "insane, epileptic, imbecile or feeble-minded." These words have been deleted, and the statute has been amended to authorize commitment of persons who are "mentally ill or mentally retarded." *L.* 1965, c. 59, § 67. Under the present language the due process need to restrict authorization to commit persons only for conditions which make the persons dangerous to themselves or to society is even clearer.

statute does not turn on guilt or innocence of a criminal charge but on the need of the individual or society for protection.

The appellants contend that *N. J. S. A.* 30:4-82 authorizes only temporary confinement, and since their imbecility is a permanent condition the statute cannot be applied to them. Appellants cite federal cases for this proposition. *Wells, by Gillig v. Attorney General of the United States,* 201 *F. 2d* 556 (10 *Cir.* 1953); *Dixon v. Steele,* 104 *F. Supp.* 904 (*W. D. Mo.* 1951). However, our statute is quite different from the federal statutes (18 *U. S. C. A.* §§ 4244-4246) at issue in the *Wells* and *Dixon* cases which are directed only to incapacity to stand trial. Our statute represents an exercise of the State's proper function as *parens patriae* in providing for the protection and treatment of persons who are a danger to themselves or others. See discussion of the State's power in this area in *Wells, supra,* 201 *F. 2d,* at *p.* 559. It would be anomalous to say that the State can protect and aid persons temporarily in need, but cannot help those whose need is greater. Appellants argue that their construction of *N. J. S. A.* 30:4-82 is required by the word "temporarily" which appears in the first paragraph of the statute, but it is clear to us this limitation applies only to the confinement pending the determination of the hearing under the statute itself.[2]

We therefore affirm the judgment that appellants are not able to stand trial, but remand on the order committing appellants to a state institution under *N. J. S. A.* 30:4-82

---

[2] At the time of the hearing on June 6, 1963 the first paragraph of *N. J. S. A.* 30:4-82 read:

"If any person in confinement under commitment, indictment or sentence, or under any process, shall appear to be insane, epileptic, imbecile or feeble-minded, the County Court of the county in which such person is confined, or the Superior Court, may, in an action like an action for commitment, determine the mental or physical condition and legal settlement of such person. Pending the action such person may be *temporarily* confined in an appropriate public institution in this State, upon an order of the court." (Emphasis added)

to give the trial judge the opportunity to decide the question of hazard to self or others which is crucial under the statute. The trial judge shall make this determination on evidence (including such as that excluded on appellants' objection) which bears on the ability of appellants to live with safety to themselves or others in the general circumstances in which they would live if they were not in custody. We retain jurisdiction.

*For affirmance*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For reversal*—None.