The People of the State of Illinois, Appellee, v. Frank Janssen, Appellant.

Gen. No. 35,128.

Opinion filed October 19, 1931.

A. H. Brown and A. J. W. Appell, for appellant; A. J. W. Appell, of counsel.

John A. Swanson, State's Attorney, and Herman S. Weinberg, Assistant State's Attorney, for appellee.

KIRKLAND, FLEMING, GREEN & MARTIN, for petitioner Walter Brandenberg; JOSEPH M. TAUSSIG, of counsel.

MR. JUSTICE MCSURELY delivered the opinion of the court.

This is an appeal by defendant from an order pursuant to a petition filed January 6, 1931, under section 89 of the Practice Act, Cahill's St. ch. 110, ¶ 89, which vacated a prior order entered January 13, 1930, also entered pursuant to a motion under section 89 of the Practice Act, which latter order expunged from the record an adjudication on January 5, 1927, that Frank Janssen was insane.

Both counsel have presented the matter upon the theory that both motions under section 89 were properly filed and their respective merits are argued in the briefs. However, we are of the opinion that section 89 is not applicable to an inquest to determine whether or not a person is insane and, therefore, the county court should not have entertained either motion.

Section 89 of the Practice Act provides that the writ of error *coram nobis* is abolished and that all errors of fact committed in the proceedings of any court of record "and which, by the common law, could have been corrected by said writ" may be corrected upon motion in writing upon reasonable notice, etc. In *Chapman v. North American Life Ins. Co.,* 292 Ill. 179, are stated the facts which at common law would be sufficient to cause a judgment to be reversed by the writ of error *coram nobis,* namely, that the nominal defendant was dead, an infant without a guardian, a *feme covert,* "or a person insane at the time of the trial." This would seem to exclude an inquest of insanity.

At an early period in England the custody and control of lunatics was vested in the king, who had au-

thority to initiate an inquest as to the sanity of the subject. Later this authority was delegated to the lord chancellor as representative of the crown, which authority was not exercised by the chancellor by virtue of his general powers as a chancellor but was of a very limited nature conferred by special grant. Here, the State in its character as *parens patriae* exercises the same power over the persons of lunatics as was formerly exercised by the king through the lord chancellor. *Dodge v. Cole,* 97 Ill. 338.

Our statute, chapter 85, entitled "Lunatics," is drawn upon the theory that the proceedings thereunder are of a special nature. It provides that when any person is supposed to be insane, any reputable citizen of the county in which the patient resides or is found may file with the clerk of the county court a statement in writing setting forth that the person named is insane or unsafe to be at large or suffering under mental derangement, and that the welfare of himself and others requires his restraint or commitment to some hospital or asylum for insane. This statement must be accompanied by the names of witnesses, one of whom at least must be a physician having personal knowledge of the case. Other details of procedure are prescribed, clearly indicating that the proceeding is not one at common law but partakes of the nature of a special chancery proceeding, following the practice as it was in England. The statute also provides that appeals shall be allowed to the circuit court from any order made or rendered under the act. Authority to discharge patients is vested in the department of public welfare under certain stated conditions. Also the act provides that any person confined as insane shall be entitled to the benefits of the writ of habeas corpus, and if the court entertaining the writ shall find that the person has been restored to reason it shall so adjudge.

The writ of error *coram nobis* was confined to proceedings at law. It is a common law writ and chancery courts had no jurisdiction to issue the same; this for the reason that in chancery the court may at any time, either by motion or by a *nunc pro tunc* order or by a motion in the nature of a bill of review, correct the record or make the decree or judgment speak the truth. *Bradford v. White,* 130 Ark. 532; 1918 L. R. A., p. 1177; 34 C. J., p. 393.

If Janssen desired to question the insanity proceedings held in January, 1927, he could have done so by appeal or writ of error, but a motion under section 89 of the Practice Act has no place in a proceeding of this kind. The county court, therefore, should not have entertained the motion made in January, 1930. For the same reason, the court should not have entertained the second motion in January, 1931, under section 89. However, as the order of the court on the second motion vacated the prior order which expunged the adjudication of insanity, the record in the insanity proceedings now stands as it was originally and as it should be, and we shall not disturb it.

A further consideration is this: Assuming that both motions were properly before the court, Walter Brandenberg, who signed the statement in writing that Janssen was insane or suffering under a mental derangement, as provided by Cahill's St. ch. 85, ¶ 3, should have been notified of the first motion which sought to expunge the finding that Janssen was insane. No such notice was given. A lunacy proceeding is an inquisition by public authorities on behalf of the public, and no one is wholly a stranger to the proceedings. In *Joost v. Racher,* 148 Ill. App. 548, it was held that it was volitional whether the party who signed the original petition in an inquest should appear or not in subsequent proceedings; that if such person is interested in any way, there is no good reason why he should not appear.

The record shows the special interest of Brandenberg. After Janssen had been adjudged insane he was committed to an asylum for the insane, and after a few months he was released on a writ of habeas corpus presented to his Honor Judge Jesse Holdom, sitting in the superior court, and it was ordered that Janssen "be and hereby is restored to all the rights and privileges of a sane person." Thereafter Janssen brought a suit at law against Brandenberg to recover damages on account of Brandenberg's part in the insanity proceedings. Brandenberg filed a plea in that case setting up as a defense the adjudication of insanity. Thereupon the first motion to expunge the order finding Janssen insane was presented, counsel stating that the motion was for the purpose of voiding the special plea filed in the case against Brandenberg. The petition of Janssen purported to set forth errors in the record of the insanity proceedings. Without particularizing, it should be noted that the petition did not set forth the true state of the record. If Brandenberg had been notified of this motion he could have appeared and contested it. As he had no notice and did not appear, an appeal by him from the order entered would have been of no avail, as the petition on its face justified the order. It would seem clear, therefore, that Brandenberg, provided the second motion under section 89 was proper, had the right to contest it. He was vitally interested in maintaining the *status quo* of the record in the insanity proceedings, so as to justify his special plea in the damage suit against him.

However, we are of the opinion, as first above stated, that neither motion should have been entertained by the county court. As reversing the last order and remanding the cause would serve only to confuse the record and as we have said the record of the insanity proceedings now stands as it was originally, we shall enter in this court an order of affirmance without in-

tending thereby to be understood as giving our approval to the filing of the two motions under section 89 in a proceeding of this sort.

*Affirmed.*

O'CONNOR, P. J., and MATCHETT, J., concur.