## DE MARCOS v. OVERHOLSER.

### No. 7778.

United States Court of Appeals for the District of Columbia.

Argued Jan. 14, 1941.

Decided May 5, 1941.

Writ of Certiorari Denied Oct. 13, 1941.

See 62 S.Ct. 97, 86 L.Ed. ——.

J. Ralph De Marcos, in proper person, and Frederick A. Ballard, of Washington, D. C., for appellant.

Edward M. Curran, U. S. Atty., and Bernard Margolius, Allen J. Krouse, and Charles B. Murray, Asst. U. S. Attys., all of Washington, D. C., for appellee.

Before GRONER, Chief Justice, and EDGERTON and RUTLEDGE, Associate Justices.

PER CURIAM.

This is an appeal from an order of the District Court discharging a writ of habeas corpus and remanding petitioner (appellant) to the custody of the Superintendent of St. Elizabeths Hospital. At the hearing in this court, petitioner was unrepresented, but at his request he was permitted to argue his petition. Thereafter, we appointed Mr. Frederick A. Ballard, an experienced member of the bar of this court, to represent him. Mr. Ballard very generously undertook this duty, and has discharged it with care and thoroughness, and we have gratefully given his able argument our best consideration.

The case is this: Petitioner, while residing in the Dominion of Canada, was convicted of manslaughter and sentenced to life imprisonment. Subsequently, and while confined in the penitentiary under the terms of his sentence, he was found to be insane and was transferred to an institution for the insane in Canada. In April, 1939, the Dominion, it is said at his own request, delivered him to the United States pursuant to the Act of March 2, 1929, 24 U.S.C.A. § 196a.[1] That statute authorizes

---

[1] "Upon the application of the Secretary of State, the Secretary of the Interior is authorized to transfer to Saint Elizabeths Hospital, in the District of Columbia, for treatment, all American citizens legally adjudged insane in the Dominion of Canada, whose legal residence in one of the States, Territories, or the District of Columbia it has been impossible to establish. Upon the ascertainment of the legal residence of persons so transferred to the hospital, the superintendent of the hospital shall thereupon transfer such persons to their respective places of residence, and the expenses attendant thereon shall be paid from the appropriation for the support of the hospital.

"Upon the request of any such patient, his relatives or friends, he shall have a hearing in the district court of the United States for the District of Columbia upon his mental condition and the right of the superintendent of Saint Elizabeths Hospital to hold him for treatment."

the Secretary of the Interior, at the instance of the Secretary of State, to transfer to St. Elizabeths Hospital in the District of Columbia, for treatment, all American citizens legally adjudged insane in the Dominion of Canada, whose legal residence in one of the states, territories, or the District of Columbia it is impossible to establish. The statute further provides that, upon the ascertainment of the legal residence of a person so transferred, the superintendent of the hospital shall thereupon transfer such person, at the cost of the United States, to his place (state) of residence. The following May, 1940, petitioner applied to the United States District Court in Washington City for a hearing upon his mental condition and the right of the Superintendent of St. Elizabeths to hold him for treatment. In that proceeding he was found by a jury and court to be a person of unsound mind and was recommitted for treatment.

The present application for habeas corpus was brought to require the United States to release petitioner so that he might himself return to Tennessee, or, in the alternative, be returned to that state by the United States Government. On the hearing below, the District Judge found the facts just above stated and, in addition, that though petitioner might have been born in Tennessee, he had not resided there, had paid no taxes there, and had not maintained a home there since 1902, and had not at any time after that date—nearly 40 years —evidenced any intention of returning to that state; that he had resided in and exercised the right of franchise in various states, including Kansas, Illinois, and Montana; and at other times had lived in various parts of the world; and held he was not now a legal resident of the state of Tennessee. The appeal challenges this decision.

We think enough appears to justify the conclusion of the lower court that, assuming petitioner had a legal residence at one time in Tennessee, he had since abandoned it and established new ones elsewhere. Petitioner could not legally have voted in the various states in which it appears he did vote, except by abandonment of his former residence and the adoption of the new one in which he exercised this right, and having on these different occasions elected to represent himself as a citizen of these different states, he will not now be heard to say that there is no evidence that he ever had an intention of abandoning his former domicile.

In what has been already said, we have not considered whether in any case the writ of habeas corpus may be employed to direct the transfer of petitioner to Tennessee, but assuming that it may, it appears from the record that Tennessee is unwilling to accept him. The result, therefore, of granting his petition would be to set at large a person found in the District of Columbia to be of unsound mind and who had previously been convicted of a serious crime. We can think of no justification for such action. This country, having accepted petitioner from the Canadian Government as an insane citizen of the United States and the court having upon a hearing found him to be incapable of taking care of himself, had the duty to confine him in one of its own institutions for his own safety and for the protection of the public until he could be transferred to one in the state of his residence; and since it does not appear that there is such a place anywhere, he must be kept in St. Elizabeths Hospital until cured of his mental disease. We are, therefore, of opinion that the order of the lower court was proper, and it is affirmed.

Affirmed.