## ESTABROOK v. KING, Warden.
### Nos. 11871, 11872.

Circuit Court of Appeals, Eighth Circuit.
May 6, 1941.
Rehearing Denied June 14, 1941.

608

Alvah W. Estabrook, pro se, for appellant.

Maurice M. Milligan, U. S. Atty., and Otto Schmid, Asst. U. S. Atty., both of Kansas City, Mo., for appellee.

Before WOODROUGH, JOHNSEN, and VAN VALKENBURGH, Circuit Judges.

JOHNSEN, Circuit Judge.

The District Court, on two separate habeas corpus applications, denied petitioner's right to a release from the United States Hospital for Defective Delinquents, at Springfield, Missouri, and he has appealed to this Court. We ordered the appeals consolidated for hearing, and directed that the matter be submitted on briefs.

In 1926, petitioner was convicted of mailing, and causing to be delivered, pancake flour mixed with arsenic, to a judge of one of the state courts of Missouri, in connection with the latter's consideration of the marital difficulties of petitioner and his wife, and he was given a prison sentence of fifteen years. The conviction was reviewed by this Court on appeal, and we affirmed the judgment. See Estabrook v. United States, 8 Cir., 28 F.2d 150.

From the information set out in petitioner's brief, it appears that in 1930 he was given treatment at the prison hospital as a paranoiac, and that in 1935 he was transferred to the hospital for defective delinquents, in accordance with the procedure prescribed by 18 U.S.C.A. § 876. His brief indicates also that he has made several previous applications to the District Court for writs of habeas corpus, which have been denied, but no appeal was apparently taken to this Court from any of these orders.

Of the two applications now before us, the first was made to J. Caskie Collett, one of the United States District Judges for the Western District of Missouri, who allowed the writ. This application is involved in Appeal No. 11,872. The trial court duly appointed counsel to represent petitioner, and a hearing was held at which petitioner was permitted to appear and testify in his own behalf. At the close of the evidence, the court denied petitioner his discharge and remanded him to custody. An appeal was allowed, and he was accorded the privilege of proceeding in forma pauperis, except that the court refused to order that he be furnished a reporter's transcript of the testimony at government expense. It appears also that an order was entered appointing counsel to represent him on appeal, but petitioner has filed brief in this Court pro se.

The first point urged before the District Court, and re-asserted here, is that the United States District Court for the Western District of Missouri, in which petitioner was convicted, had no jurisdiction of the offense, and that all subsequent proceedings have therefore been void. He claims that the prosecution could only have been brought at Denver, Colorado, where the poison was placed in the mail. This same contention was made, considered, and adjudicated against petitioner on the original appeal from his conviction, and is discussed in our opinion in 28 F.2d 150, 151, 152. We there held that under section 217 of the Criminal Code, 18 U.S. C.A. § 340, where prohibited matter is sent through the mail, with intent to kill or injure another, a crime is committed at the place where defendant causes delivery to be made, and prosecution may be had

in that district. This construction of the statute is sound and is determinative of petitioner's contention.

■ The second point urged is that petitioner's trial, conviction and sentence were void, because the indictment against him failed to charge a crime. His contention is that arsenic is non-poisonous, and that no crime therefore could possibly be involved in sending it through the mail. He offers to appear before us and swallow an ounce of arsenic in demonstration of his contention.

The general sufficiency of the indictment to charge a crime was challenged by demurrer and was considered in Estabrook v. United States, supra. The substance of the indictment is there set out and need not be repeated here. It was there held (page 152 of 28 F.2d): "The charge embodies all elements of the crime as it is defined by the statute, and in addition thereto, sets out such facts as to specify the particular offense."

In addition to this, the Government on the prosecution necessarily was required to prove beyond a reasonable doubt that what petitioner had mailed was in fact poisonous, and this burden it duly satisfied. The judgment in that case conclusively establishes the poisonous character of the substance that was involved. With the technical aspects of chemistry, we are not concerned in this collateral proceeding. Whether arsenic as an abstract element is non-poisonous, as petitioner contends, is unimportant here. For any purpose that we might now be required to consider the indictment, we would be entitled to give the term arsenic its popular and generic signification. In that sense, it certainly connotes a poison. Thus, Webster's New International Dictionary, Second Edition, says: "Both it (arsenic) and its soluble compounds are extremely poisonous." The Encyclopaedia Britannica, 13th Ed., Vol. II, p. 651, similarly observes that "arsenic and most of its soluble compounds are very poisonous." It adds (p. 653): "Metallic arsenic is probably not poisonous, but as it usually becomes oxidized in the alimentary canal, the usual symptoms of arsenical poisoning follow its use." But, as we have indicated, the refinements of the science of chemistry are in any event not open to consideration in this proceeding, and petitioner cannot be discharged from custody on the basis of his second contention.

Petitioner's third point is that the Act of May 13, 1930, 18 U.S.C.A. §§ 871–880, providing for the establishment of a hospital for defective delinquents and the transfer of such prisoners thereto, is ex post facto as to him, because it was enacted subsequent to his conviction and sentence, and that it cannot therefore validly operate to deprive him of the sentence deduction for good behavior provided for in 18 U.S.C.A. § 710.

■ Petitioner had been transferred to the hospital for defective delinquents before his good-time allowance had finally accrued or become vested. In Douglas v. King, 8 Cir., 110 F.2d 911, we held that, where a prisoner had been determined to be of unsound mind before the expiration of his sentence, his case was taken out of the operation of the statute providing for deductions from sentences for good conduct and was governed by the statute making provision for a transfer to the hospital for defective delinquents until the restoration of his sanity or until his maximum sentence had been served. Our opinion says (page 913 of 110 F.2d): "The right [to a deduction for good conduct] is merely contingent and does not become absolute or vested until the prisoner shall have earned the right by compliance with the statutory provisions. Congress having extended the privilege, might withdraw it, except as to those persons in whom the privilege had ripened into a vested right. * * * It having been determined that the prisoner was of unsound mind, before the expiration of his sentence, his case is taken out of the operation of Section 710, supra, and is governed by Section 876, supra [18 U.S.C.A. §§ 710, 876]."

■■ Petitioner further argues that the federal government is without power in the general field of lunacy, and that he could not competently be adjudged to be insane except by a probate court of Kansas, in which state he was incarcerated prior to his removal to the hospital for defective delinquents. No discussion of this contention is necessary. In Douglas v. King, supra, we expressly held that the determination of a prisoner's mental condition, after his conviction and sentence, under the statute providing for the transfer of mentally defective inmates to a hospital, with-

out a judicial trial, does no violence to his constitutional rights. Congress undeniably has the power to make provision for the proper care and treatment of federal prisoners during the period of their incarceration, and to set up any form of administrative machinery that it deems necessary for this purpose.

It is not possible to discuss all of petitioner's remaining contentions individually, without prolonging this opinion to an undue length. Each one of them, however, has been considerately examined. Some are adequately answered by Estabrook v. United States, supra. Others are wholly extraneous, such as complaints about the qualification and experience of the members of the hospital staff and their attitude toward petitioner. We deem it necessary therefore to consider only one further question in connection with Appeal No. 11,872, and that is the refusal of the District Court to order that petitioner be furnished a reporter's transcript of the testimony at government expense.

 In United States ex rel. Estabrook v. Otis, 8 Cir., 18 F.2d 689, we held that the court had no power, under 28 U.S.C.A. § 832, to authorize payment of the cost of a transcript of the testimony in a proceeding prosecuted in forma pauperis. Rule 80 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, authorizing the designation of an official court stenographer, has been held not to have changed this situation. United States ex rel. McNeill v. Avis, 3 Cir., 108 F.2d 457; Cheek v. Thompson, D.C.La., 33 F. Supp. 497. The charges of a court reporter are not in their inception "fees or costs", within the meaning of 28 U.S.C.A. § 832, but rest upon contractual arrangements. As the statute now stands, the trial court could not direct that the United States should pay such charges.

But, even if the court had been possessed of this power, the order of denial would not have constituted an abuse of discretion in the present case. Petitioner has set out the substance of the desired testimony in his brief, and it could in no way affect the result here.

We must accordingly hold that petitioner was properly denied his release under his first habeas corpus application.

Appeal No. 11,871 involves petitioner's second habeas corpus application. It was addressed to Merrill E. Otis, another United States District Judge for the Western District of Missouri, before whom petitioner was originally tried and convicted. It set forth substantially the same grounds as the previous application, which we have discussed above. It was presented in petitioner's behalf by a member of the bar. The trial court, after an examination and consideration of it, held that it failed to show any facts that would justify issuance of the writ, and the application was accordingly denied.

We deem it necessary here to consider only one contention of petitioner in connection with it. Petitioner argues that upon presentation of an application for habeas corpus, the trial judge is required to issue the writ and to permit the petitioner to have a hearing before him.

It has repeatedly been held that unless an application presents such facts as would prima facie entitle petitioner to the writ, it is not error to deny it. Where it appears from the showing made by petitioner that, if he were brought into court and the cause of his detention inquired into, he would necessarily be remanded, the writ need not be awarded. In re Durrant (In re Boardman), 169 U.S. 39, 18 S.Ct. 291, 42 L.Ed. 653. We recently said, in Harrison v. King, 8 Cir., 111 F.2d 420, 422, "When a preliminary examination of an application discloses no grounds upon which the writ could issue, it is not error to dismiss the application upon motion of the United States Attorney without producing the petitioner for hearing." See also Mothershead v. King, 8 Cir., 112 F.2d 1004; 18 U.S.C.A. § 455.

The orders of the District Court on both of petitioner's applications must be affirmed.