## WELLS, by GILLIG, v. ATTORNEY GENERAL OF THE UNITED STATES.

No. 4515.

United States Court of Appeals
Tenth Circuit.

Jan. 22, 1953.

Emmet A. Blaes, Wichita, Kan. (Jochems, Sargent & Blaes, Wichita, Kan., on the brief), for appellant.

Eugene W. Davis, U. S. Atty., Topeka, Kan., for appellees.

Before BRATTON, HUXMAN, and MURRAH, Circuit Judges.

BRATTON, Circuit Judge.

The appeal in this proceeding in habeas corpus presents a question respecting which there is a dearth of controlling landmarks. An indictment was returned in the United States Court for Kansas charging Joe Wells, hereinafter referred to as petitioner, with the crime of transporting in interstate commerce a stolen motor vehicle, knowing it to have been stolen. Petitioner was arrested and subsequently taken before the court. After a hearing, the court found that there was reasonable cause to believe that petitioner was mentally incompetent and that he should be transported to the Medical Center for Federal Prison-

ers at Springfield, Missouri, for observation and treatment, and for the making of a report of psychiatric findings. An order was entered accordingly, and petitioner was transported to the Medical Center. The psychiatric examination there made was reduced to writing and filed with the court. Petitioner's condition was diagnosed as schizophrenia, catatonic type; and it was said in the report that he was mentally incompetent. Petitioner was returned to the custody of the court. A second hearing was had, at which a psychiatrist from the Medical Center testified that the condition of petitioner had been properly diagnosed as schizophrenia of catatonic type; that he was mentally incompetent; and that he was completely unable to cooperate with counsel. At the conclusion of the hearing, the court found that petitioner was mentally incompetent, did not know right from wrong, and was unable to cooperate with counsel. But no finding was made in respect to whether such mental condition was temporary or permanent. An order was entered committing petitioner to the custody of the Attorney General or his authorized representative until he became mentally competent to stand trial or until the charge against him was disposed of according to law. While confined in the local county jail pursuant to such order, and before being transferred elsewhere, petitioner—appearing by and through his next friend—instituted this proceeding in habeas corpus in which he challenged the validity of the order and his confinement thereunder on the broad ground that the United States was not empowered to detain and incarcerate him for an indefinite period of time, perhaps for life, in advance of trial of the criminal charge, merely because he was insane. The court denied the petition, and this appeal followed.

Section 4244, Title 18, United States Code, provides that whenever after arrest and prior to the imposition of sentence there is reasonable cause to believe that the person charged with an offense may be presently insane or otherwise so mentally incompetent as to be unable to understand the proceedings against him or properly to assist in his own defense, the court shall cause him to be examined in respect to his mental condition by at least one qualified psychiatrist, who shall report to the court. The statute further provides that for the purpose of the examination the accused may be committed for such reasonable period as the court may determine to a suitable hospital or other facility to be designated by the court. And the statute further provides that if the report of the psychiatrist indicates a state of present insanity or such mental incompetency of the accused, the court shall hold a hearing, upon due notice, at which evidence concerning the mental condition of the accused may be submitted, including the report of the psychiatrist, and that the court shall make a finding in respect thereto. Section 4245 provides that whenever the Director of the Bureau of Prisons shall certify that a person convicted of a criminal offense has been examined by the board of examiners referred to in 18 U.S.C.A. § 4241, and that there is probable cause to believe that such person was mentally incompetent at the time of his trial, provided the issue of mental competency was not raised and determined before or during the trial, the Attorney General shall transmit the report and the certificate to the clerk of the court in which the conviction was had. The section further provides that upon the report and certificate being lodged with the clerk, the court shall hold a hearing to determine the competency of the accused in accordance with the provisions of section 4244; that on such hearing the certificate of the Director of the Bureau of Prisons shall be prima facie evidence of the facts and conclusions certified therein; and that if the court shall find that the accused was mentally incompetent at the time of his trial, the judgment of conviction shall be set aside and a new trial granted. Section 4246 provides:

"Whenever the trial court shall determine in accordance with sections 4244 and 4245 of this title that an accused is or was mentally incompetent, the court may commit the accused to the custody of the Attorney General or his authorized representative, until the accused shall be mentally competent to

stand trial or until the pending charges against him are disposed of according to law. And if the court after hearing as provided in the preceding sections 4244 and 4245 shall determine that the conditions specified in the following section 4247 exist, the commitment shall be governed by section 4248 as herein provided."

Section 4247 relates to alternate procedure on the expiration of a sentence; and section 4248 deals with the termination of custody by release or transfer. Neither has material bearing here.

■ The several states in their character as parens patriae have general power and are under the general duty of caring for insane persons. The prerogative is a segment of police power. In the exercise of such power, insane persons may be restrained and confined both for the welfare of themselves and for the protection of the public. And if the exactions of due process are met, such restraint and confinement do not violate any constitutional right of the individual. In re Dowdell, 169 Mass. 387, 47 N.E. 1033; Sporza v. German Savings Bank, 192 N.Y. 8, 84 N.E. 406; McMahon v. Mead, 30 S.D. 515, 139 N.W. 122; State v. Saffron, 146 Wash. 202, 262 P. 970; Ex parte Perry, 137 N.J.Eq. 161, 43 A.2d 885; People v. Janssen, 263 Ill.App. 101; Shapley v. Cohoon, D.C., 258 F. 752.

■ While the care of insane persons is essentially the function of the states in their sovereign capacity as parens patriae, and while the federal government has neither constitutional nor inherent power to enter the general field of lunacy, Congress has the power to make provision for the proper care and treatment of persons who become temporarily insane while in custody of the United States awaiting trial upon criminal charges, and to make provision for the care and treatment of federal prisoners who become mentally incompetent during their incarceration after conviction. Estabrook v. King, 8 Cir., 119 F.2d 607; Jones v. Pescor, 8 Cir., 169 F.2d 853.

■ Petitioner does not challenge the power of Congress to make provision for the proper care and treatment of persons who become temporarily insane while in custody awaiting trial upon criminal charges, or to make like provision for the care and treatment of federal prisoners who become mentally incompetent after conviction and while serving their sentences. He contends that he has not been tried and convicted; that he is permanently insane; that he has been committed to the custody of the Attorney General until he regains his mental competency; that he will never again be mentally competent; that in substance and effect, he has been committed for the remainder of his life; and that if section 4246 be construed to authorize such commitment, it violates his constitutional rights. In Higgins v. McGrath, D.C., 98 F.Supp. 670, the constitutional validity of the statute was challenged on the ground that the United States has no power to detain a person merely because he is insane. But the broad contention presented was not determined. The court construed the order or judgment of commitment as merely committing the accused for a reasonable period of time until he was restored to sanity; and it was the view of the court that a statute authorizing detention for that period and purpose was not of doubtful constitutionality. The court was of the further view that since being committed, the accused had apparently regained his sanity to such an extent that he could stand trial on the criminal charge pending against him; and that he should be returned to the court having jurisdiction of the criminal case for the final determination of that question. In Dixon v. Steele, D.C., 104 F.Supp. 904, it affirmatively appeared that the petitioner for the writ was permanently insane, and it was held that his detention under section 4246 violated his constitutional rights. In approaching the question whether the statute authorizes the commitment of a person who becomes permanently incompetent while detained awaiting trial on a criminal charge, and if so whether it violates the constitutional rights of such person, it is appropriate to bear in mind the widely recognized cardinal rule of construction that a statute should be construed in a manner which will preserve

it against attack on constitutional grounds if it can be done without violating the plain language or clear intendment of the statute. National Labor Relations Board v. Jones & Laughlin Steel Corp., 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893, 108 A.L.R. 1352; Chippewa Indians v. United States, 301 U.S. 358, 376, 57 S.Ct. 826, 81 L.Ed. 1156. And it is also appropriate to bear in mind the somewhat related rule that in the enactment of a statute Congress is presumed to act with knowledge of controlling constitutional limitations or proscriptions and with an intent and purpose to avoid their contravention. Becker Steel Company of America v. Cummings, 296 U.S. 74, 56 S.Ct. 15, 80 L.Ed. 54; United States v. Butler, 297 U.S. 1, 67, 56 S.Ct. 312, 80 L.Ed. 477.

■ Viewed in the light of the rules of construction to which reference has been made, the textual content of the statute is persuasive that it was not intended to authorize the commitment of one who was permanently insane at the time of his arrest or who suffers permanent mental incompetency while awaiting trial upon a criminal charge, and that therefore it is not open to attack on the ground of constitutional invalidity. The words in the statute that the court may commit the accused until he "shall be mentally competent to stand trial or until the pending charges against him are disposed of according to law" presuppose temporary as distinguished from permanent mental incompetency. It is implicit in the quoted language that the concern of Congress was to make provision for the care and treatment of persons whose return to mental competency at some time in the future is reasonably to be expected, not those hopelessly insane and whose restoration to mental competency is never to be expected. Furthermore, to construe the statute as authorizing the United States to detain and incarcerate perhaps during the remainder of their lives persons who were permanently and hopelessly insane at the time of their arrest on criminal charges or who become so while awaiting trial on criminal charges and for that reason will never be tried is to ascribe to Congress an effort to clothe the United States with power to assume the role of parens patriae and enter the general field of lunacy in respect to persons in that condition. Neither the language of the statute nor its legislative history compels that construction. Instead, it is fairly clear that in the enactment of the statute the intent and purpose of Congress was to go no further than to make humane provision for the care and treatment of persons who were temporarily incompetent at the time of their arrest or who become so before trial on criminal charges and whose restoration to competency may be reasonably expected at some time in the future and therefore whose trial on the criminal charges at some time in the future may reasonably be expected. That construction does not violate the language of the statute. It does not run afoul of the legislative history of the statute. And it preserves the statute against the present attack of invalidity on constitutional grounds.

■ The evidence adduced on the hearing in the criminal case, and that adduced upon the trial of this proceeding in habeas corpus, clearly showed that petitioner was then presently in a condition of mental incompetency, but there was no evidence in the form of expert opinion or otherwise in respect to whether such mental condition was temporary or permanent. All of the evidence will be searched in vain for any medical or psychiatric expression in respect to the mental condition of petitioner being temporary or otherwise. So far as the record reflects, his condition may have been only temporary with reasonable prospect of its termination and his ability to stand trial on the criminal charge, or it may have been hopelessly permanent with no reasonable prospect of him ever being tried on the criminal charge. If his mental incompetency was temporary, he was subject to commitment under the statute; if hopelessly permanent, he was not. The question should have been explored and a specific finding made in respect to the character of his mental condition as to being temporary or permanent.

The judgment denying the petition for the writ of habeas corpus is vacated and the cause is remanded with directions to order the return of petitioner to the United States

Court for Kansas for a hearing and finding in the criminal case as to whether the mental incompetency of petitioner is temporary or permanent, and for further proceedings in respect thereto not in conflict with the views herein expressed.

HUXMAN, Circuit Judge (dissenting).

Whether Congress has constitutional power to legislate generally in the field of lunacy and mental incompetency is not an issue in this case and need not be here considered because Congress has not attempted to so legislate. The power of the states to legislate with respect to lunacy and insanity is an exercise of the police power. The asserted right of the federal government to legislate with respect to mentally incompetent persons is not claimed under any specific grant of power. It rather arises as the necessary implied power in the exercise of duties conferred upon various governmental departments by the constitution and congressional enactments thereunder. As stated by Judge Ridge in Higgins v. McGrath, D.C., 98 F.Supp. 670, 674, "The right of a sovereign to proceed against an insane person charged with the commission of a felony is incidental to the power to define crimes and prescribe procedure under a criminal code." It is difficult to see why that power does not exist as well in case of mental incompetency of long duration as in the case of mental incompetency of short duration, when exercised as an incident to the proper discharge of government functions with relation to persons properly within the jurisdiction of a governmental agency. Common principles of humanity would seem to dictate that when the federal government has taken one into lawful custody, under the exercise of valid power, charged with the responsibility of exhausting its jurisdiction over the subject matter as well as the person thus brought before it who thereafter is found to be insane, it then becomes its duty to adequately care and provide for such a one and that this may be done in an institution set up for that specific purpose. Confining such a one in an institution is in no sense imprisonment or punishment for crime. Restraining an incompetent in a mental hospital deprives him of no constitutional right. He is not entitled to be free for his own sake as well as for the welfare of society.

How the government shall discharge the duty it owes to an insane person lawfully in its jurisdiction is for it to say and not for the individual himself. Congress has legislated with respect to this matter in a number of instances where incompetents have come within its jurisdiction for lawful purposes. By 24 U.S.C.A. § 161, it established St. Elizabeths Hospital in the District of Columbia for the humane care and enlightened curative treatment of the insane of the Army and Navy of the United States and of the District of Columbia. Under different sections of Chapter 24 it has provided for admission to this hospital of insane persons coming under the jurisdiction of the federal government in various capacities. Such persons include personnel of the Army, the Navy, the Marine Corps, and the Coast Guard, insane inmates of Public Health Service, inmates of the soldiers Home, inmates of the National Home for Disabled Veterans, insane American citizens in the Canal Zone and American citizens adjudged insane in Canada. In the case of insane persons from the Canal Zone and from Canada, the statute provides that the Superintendent of the Hospital shall upon ascertainment of the legal residence of such persons transfer them to the respective states of their residence.[1] The sections dealing with the other classifications set out above contain no such provision and apparently thereunder the federal government exercises its jurisdiction over them with right to restrain and confine them in its own institutions throughout the period of insanity, whether long or short.

It seems to me that a consideration of these various statutes warrants the conclusion that Congress was of the view that it had the power and that it was its duty with respect to personnel properly in its jurisdiction to provide for their care and control, in the event of insanity, without respect as to whether such insanity was of long or

---

1. See 24 U.S.C.A. §§ 196 and 196a.

short duration. That is also the conclusion which is reached from a consideration of the cases which have considered this question.

Williams v. Overholser, 78 U.S.App.D. C. 95, 137 F.2d 545, is an interesting case and one which would seem to be clearly in point on the right of the government to retain custody of one perhaps permanently insane. Williams as an insane person was originally committed to St. Elizabeths Hospital in 1921. Prior thereto he had been an inmate of the National Home for Disabled Volunteer Soldiers in Togus, Maine. While there he had shot and killed one of the physicians of the home. The commitment to St. Elizabeths was pursuant to the Act of Congress noted above, providing for commitment to St. Elizabeths Hospital of an inmate of the National Home for Disabled Volunteer Soldiers who shall become insane. It would appear from a reading of the facts of the case that he had not been tried for the criminal offense but had been committed as an insane person. In 1935 a district judge ruled that his commitment to St. Elizabeths was illegal and ordered him released from custody. Thereafter he was apprehended and as a result of an inquiry by a jury into his alleged insanity was recommitted. Numerous applications for release by habeas corpus had been denied until the one which was decided by the United States Circuit Court of Appeals for the District of Columbia in the above citation in 1943. The point urged and considered by the trial court was whether under Title 16 § 17 of the Act of 1899, D.C.Code, which makes it the duty of the commissioner of the District to "return to their places of residence * * * all indigent insane persons not residing in the District at the time they became insane" he had a right to demand his release from St. Elizabeths Hospital and to be returned to the State of Maine where he claimed his residence. The court did not specifically hold that he had no right to be thus returned but did so hold by inference because quoting from its former case of Howard v. Overholser, 76 U.S.App.D.C. 166, 130 F.2d 429, 432, it said: "If it is assumed that petitioner

has or may establish some right of transfer, it is obviously not an absolute one. The statute does not contemplate that a committed insane person shall be transferred in any case to the state of his residence without regard to its willingness to receive him." The court upheld the right of the federal government to retain custody and control of Williams, notwithstanding that his insanity apparently was permanent. The federal government had so confined him for 22 years. The court alluded to the fact that there was no showing that the State of Maine was willing to receive him; that there was no power in the District of Columbia authorities to enforce acceptance by the state, and that under these circumstances petitioner was not entitled to be discharged either into the State of Maine or into the District of Columbia without provision for his care and restraint.

In De Marcos v. Overholser, 74 App.D. C. 42, 122 F.2d 16, an insane American citizen was convicted of manslaughter in Canada. He was thereafter delivered to the United States Government and confined in St. Elizabeths Hospital. His contention in a habeas corpus proceeding that his detention by the United States was unlawful and that he was entitled to release so that he might himself return to Tennessee, the state of his legal residence, or in the alternative be delivered to the state, was rejected. Again the court in its opinion indicated there was doubt as to his right to raise the question by habeas corpus proceeding. The basis of the court's conclusion upholding the right of the government to retain custody of the petitioner was that where the government properly acquired jurisdiction of an insane person it was in any event under a duty to retain the custody of him and that in the absence of a transfer to the state it must thus keep him until cured of his mental disease.

In White v. Treibly, 57 App.D.C. 238, 19 F.2d 712, 713, a retired army officer became insane and was admitted to St. Elizabeths Hospital. It would fairly appear from the case that his insanity was incurable. By habeas corpus proceeding he challenged the right of the government to

retain him in custody, contending that he was entitled to be returned to the state of his residence. The trial court agreed and ordered him released. On appeal the Circuit Court reversed, upholding the right of the government to keep him in custody. The court said: "His care and protection, while thus incapacitated and unable to act for himself, are the concern and duty of the government."

Express constitutional authority is unnecessary to enable the government to provide for the restrainment and adequate protection of mentally incompetent persons properly coming under its jurisdiction. The duty to do so is dictated by the humanitarian principle requiring those who have jurisdiction of mental incompetents unable to care for themselves to protect and care for them. This duty and responsibility exists as well with respect to those whose mental incapacity may be of long duration as to those whose incapacity is only temporary. It seems to me that an analysis of the various statutes cited and the decisions of the courts support this conclusion.

The manner in which this duty is to be discharged is to be determined by the government and not by the incompetent. It may provide as it has in some of the statutes cited above that such incompetents shall be confined in mental hospitals, maintained by the government; or as in others, that they shall be turned over if possible to the states of their legal domicile. The decisions seem to me to make it clear that the incompetent has no right of choice in determining the place of his confinement. That decision is to be made by the sovereign in whose custody the incompetent finds himself and whose duty it is to provide for him. The decisions above cited also make it clear that an incompetent may not by habeas corpus challenge the government's custody of him even under those statutes which provide that the retaining authorities shall return him to the custody of the state of his legal residence.

I accordingly conclude that there is no constitutional inhibition against the government preventing it from making adequate, proper and humane provision for the care, custody and treatment of incompetent persons properly brought into court under the government's criminal jurisdiction, irrespective of whether that incapacity is of short or long duration. How that duty shall be discharged is for the government to say and the incompetent may not complain because the government chooses to provide for him in a proper institution of its own rather than to engage in a tug-of-war with the state to see whether it will take custody or control of him.

The majority concedes congressional power to make provision for the proper care, custody and treatment of persons temporarily insane, finding themselves within the jurisdiction of the federal government, but fail to find constitutional authority to do the same with respect to those whose insanity may be of long duration. Since this right is incidental to the power to define crimes and prescribe procedure under a criminal code to administer criminal jurisdiction of the federal government, no express constitutional power is necessary and no reason appears to me why the power is so limited, as indicated by the majority opinion. In neither event does the federal government attempt to invade this field as parens patriae or undertake to legislate generally with respect to insane persons, their care and custody and the administration of their estates.

It remains only to consider the scope, the effect, and extent of the power exercised by Congress under § 4246. In other words, did Congress intend to confer the powers therein granted only in the case of those temporarily insane, or did it intend that the court should make complete and adequate protection and provision for all insane properly brought into court under its criminal jurisdiction, so long as such insanity existed.

Courts possess the power and it is their duty to interpret and determine legislative intent where there is ambiguity and uncertainty as to meaning. But in so doing we must not over-indulge or unduly speculate with respect to meanings not clearly reflected in the language of the statute, and the language in a statute that is free from

ambiguity should be given its logical and ordinary meaning. The language of Section 4246 seems to me to be clear and unambiguous. It would seem that when Congress used the term "mentally incompetent" it used it in its ordinary and accepted meaning and that had it intended to distinguish between mental incompetency temporary in nature and that of long duration it would have used appropriate language to indicate such an intent and would have made provision as to what the court should do in case where one brought before it for trial was found to be thus afflicted. That Congress intended the provisions of Section 4246 to apply in any case and to empower the government to retain custody and control of such incompetent until his case was otherwise disposed of becomes more apparent when we consider Section 4248. The two sections must be considered together because Section 4246 provides that when the court finds that the conditions specified in Section 4247 exist the commitment shall be governed by the provisions of Section 4248. Section 4248 provides that the commitment shall run until restoration of mental capacity or until there is such improvement that one's release will not endanger the safety or property of others or that suitable arrangements have been made for one's care or custody by the state of his residence. This to me clearly negatives a congressional intent that the commitment under Section 4246 is only in case of temporary mental incapacity and for a short period of time.

This construction is in line with the expressed congressional intent in other statutes, as pointed out, to confer jurisdiction over other classes of insane persons properly coming under the jurisdiction of the federal government, irrespective of the nature or extent of the insanity. So also the decisions of the courts referred to above to me clearly indicate that the right of the federal government to retain custody of such classes of incompetents is not dependent upon temporary insanity and that the right to continue custody of such persons exists even in cases where the statutes provide that an attempt shall be made to transfer them to the state of their legal residence, so long as incompetency exists. The place of detention is for the government and the incompetent has no choice therein. While I am of the view that appellant may not challenge the government's custody of him so long as mental incompetency exists, he may in any event not do so until he shows that at least one of the conditions of Section 4248 exist, and this he has wholly failed to do.

I would affirm the judgment appealed from.