### KITCHENS v. STEELE, Warden.

United States District Court
W. D. Missouri, W. D.
May 12, 1953.

Mack Kitchens, per se.

Sam M. Wear, U. S. Atty., David A. Thompson, Asst. U. S. Atty., Kansas City, Mo., for respondent.

RIDGE, District Judge.

Petitioner, concededly permanently insane, is confined in the United States Medical Center for Federal Prisoners at Springfield, Missouri, under the following circumstances. On or about October 1, 1952, an indictment was returned against petitioner in the United States District Court for the District of the State of Montana, charging petitioner in fourteen counts with violation of Sections 1708 and 495, Title 18 U.S.C.A. Before arraignment and prior to the 13th day of November, 1952, counsel was appointed to defend petitioner against said charges by the Court in which the indictment was returned. Thereafter, the United States Attorney for the District of Montana filed in said Court a motion for a judicial determination of the mental capacity of petitioner. The Court having jurisdiction over petitioner caused him to be examined by a qualified psychiatrist; who, after examination, reported to the Court that petitioner was then presently insane. Thereafter, a hearing, on due notice, was held on December 1, 1952, before said Court, in accordance with the provisions of Section 4244, Title 18 U.S.C.A., for the purpose of taking evidence as to the mental condition of petitioner. At the conclusion of said hearing, the above Court made findings of fact in which it stated petitioner "is presently insane" and "is so mentally incompetent as to be unable to understand the proceedings against him or to properly assist in his own defense." Thereupon, said Court, consonant with the mandate of Section 4246, Title 18 U.S.C.A., committed petitioner "to the custody of the Attorney General of the United States, or his authorized representative, until it shall be determined that the accused is mentally competent to stand trial, or until the pending charges against him are disposed of according to law." Pursuant to such confinement, petitioner was duly confined in the Medical Center aforesaid. After being so confined, petitioner was again examined, and particularly under date of March 10, 1953, by the Neuro-Psychiatric Staff of said institution. Said staff concurred in the previous diagnosis of petitioner as "paranoid schizophrenia and agreed that the

patient remained mentally incompetent." Said staff noted "homicidal impulses" and other tendencies of a permanent nature in petitioner, and concluded that "he will require more than the usual custodial consideration for mental patients." It was the recommendation of said staff "in view of the total situation" that petitioner "be transferred to the California State Hospital System."

Presently, the Warden of the Medical Center is attempting to have the residence of petitioner acknowledged by the State of California. As a part of the response to order to show cause is a letter under date of April 16, 1953, from the Warden of the Medical Center to the United States District Attorney for this District, in which the Warden states that he has "not yet received acknowledgment of residence from the State of California. While we feel reasonably sure he (petitioner) has retained settlement there, it is noted that he has been nomadic during recent years, and California will likely have to explore the history intensively to determine whether or not he has a present claim upon that State. It remains our judgment that, in the interests of the community, hospitalization under whatever auspices should be uninterrupted for an indefinite period."

In none of the papers that petitioner has presented to this Court, all of which the Court has permitted to be filed and made a part of the record herein and treated as constituting a formal petition to this Court for a writ of habeas corpus, does petitioner assert that he is presently sane. On the contrary, alleging that he is insane as above diagnosed by the Staff of the Medical Center, he attacks the constitutionality of Sections 4244 and 4246, supra, and asserts that because of such insanity, shown to exist at the time of the commission of the offense of which he stands accused, said sections are unconstitutional, in that they permit the Federal Government to permanently confine him in the Medical Center aforesaid when he should have been confined in a Montana State Hospital by his committing Court.

The instant action is one of many similar actions presented to this United States District Court, by inmates of the Medical Center, presenting issues of fact and law indistinguishable from those above stated. My esteemed colleague, Judge Richard M. Duncan, has ruled that Section 4246, supra, is unconstitutional, insofar as said statute attempts, if it does, to confer upon the United States District Courts jurisdiction to commit an accused person to custody of Federal authorities for imprisonment for an uncertain, indefinite time, pending restoration of his sanity, or until the charges against him are otherwise disposed of, particularly where it is established that an accused was insane at the time of the commission of the offense of which he stands accused and committed under said section. Cf. Dixon v. Steele, D.C., 104 F.Supp. 904; Edwards v. Steele, D.C., 112 F.Supp. 382. Howsoever, I understand Judge Duncan conceives Section 4246, supra, constitutional, as does the Circuit Court of Appeals for the Tenth Circuit, if it is only intended thereby to authorize a temporary commitment of an insane accused before trial and for such a reasonable period of time pending restoration to competency so that accused "may be reasonably expected at some time in the future" to stand "trial on the criminal charges" made against him. "That (such a) construction (of Section 4246) does not violate the language of the statute. It does not run afoul of the legislative history of the statute. And it preserves the statute against (the sort of an) attack of invalidity on constitutional grounds", as here made by petitioner. (Parens. added.) Wells, by Gillig v. Attorney General, 10 Cir., 201 F.2d 556, 560.

In Higgins v. McGrath, D.C., 98 F.Supp. 670, 674, I said: "The right of a sovereign to proceed against an insane person charged with the commission of a felony is incidental to the power to define crimes and prescribe procedure under a criminal code. * * * So far as that power is resident in the Federal Government, it can be traced to Art. 1, Sec. 8, Cl. 18, of the Constitution of the United States, relating to 'Incidental powers.'" In that opinion, I did not expatiate upon that ruling. I should now do so, because I cannot conceive that under the facts as here

revealed petitioner is entitled to his liberty and be forthwith released from the Medical Center; and, that I believe the Congress does have power under the Constitution to enact the above statute, and within the framework of due process to invent the scheme that Congress has done for the care, custody and control of criminal mental defectives as provided in Chapter 315, Title 18 U.S.C.A.

■ No fortifying authority is necessary to sustain the proposition that in the United States a double citizenship exists. A citizen of the United States is a citizen of the Federal Government and at the same time a citizen of the State in which he resides. Determination of what is qualified residence within a State is not here necessary. Suffice it to say that one possessing such double citizenship owes allegiance and is entitled to protection from each sovereign to whose jurisdiction he is subject.

■ The power to restrain insane persons generally in the United States is ordinarily traceable to the character of *parens patriae* that the several states bear to their citizens. It is conceded that no such power rests in the Federal Government under the Federal Constitution. But we are not here concerned with ordinary insane persons. We are dealing with those found to be criminally insane by a United States District Court, after a public hearing where the insane person is present, represented by counsel, where proof was taken and full investigation of the facts was had, and thereafter a judicial finding and order of commitment was made, all pursuant to an Act of Congress, specially enacted to confine such class of persons when accused with violations of Federal laws. Thus, the Congress of the United States has said that insane persons found violating Federal laws, who because of their present insanity cannot be prosecuted therefor under ordinary criminal procedure, are to be specially dealt with. Did the Congress have power so to do?

■ Ever since the case of United States v. Worrall, 2 Dall. 384, 2 U.S. 384, 1 L.Ed. 426, it has been universally recognized that Federal Courts have no common law jurisdiction in criminal cases. The jurisdiction of such Courts is wholly derived from Acts of the Congress. Although the Constitution contains no grant, general or specific, to Congress of power to provide for the punishment of crimes, except piracies and felonies on the high seas, offenses against the law of nations, treason, and counterfeiting the securities and coin of the United States, no one doubts the power of Congress to "create, define, and punish, crimes and offenses, whenever they shall deem it necessary and proper by law to do so, for effectuating the objects of the Government." United States v. Worrall, supra; Cf. McCulloch v. Maryland, 4 Wheat. 316, 17 U.S. 316, 4 L.Ed. 579; United States v. Hall, 98 U.S. 343, 346, 25 L.Ed. 180. In light of that power, what is there to prevent the Congress from modifying the previous concept regarding insane persons, and saying that when a citizen becomes insane to whom the Federal Government owes a duty and from whom the Federal Government is entitled to allegiance, violates an Act of the Congress, and no other suitable arrangement has been made for the care, custody and control of such a citizen, that the Federal Government shall have jurisdiction over him, and within the concept of due process of law confine such citizen until he "shall be mentally competent to stand trial, or until the pending charges against him are disposed of according to law"?

■ The Congress of the United States of America, in treating with those who violate laws enacted by it, is not fettered by common law concepts of crime and procedure. That is not to say that common law concepts of guilt and innocence are not a part of due process in federal criminal procedure as we conceive it. What is thereby meant is that the Congress may incorporate as a part of the Criminal Code of the United States, humane provisions for the confinement of the criminally insane, temporarily, or permanently if necessary, where other "suitable arrangements for the * * * care of" an insane citizen "are not otherwise available". Particularly must such power be resident in the Congress where a judicial determination is to be made, if such a person is to be permanently

restrained, "that if released he will probably endanger the safety of the officers, the property, or other interests of the United States". Section 4247, Title 18 U.S.C.A. If, as ruled in Wells, by Gillig v. Attorney General, supra, the Congress may constitutionally enact as a part of the Federal Criminal Code, Section 4246, supra, that an insane person subject to Federal Criminal jurisdiction may be confined for a temporary, reasonable period of time to determine whether such person may stand "trial on the criminal charges at some time in the future", [201 F.2d 560] we perceive no constitutional barrier against Congress exercising power derived from the same source, and enacting humane laws to permanently confine such class of citizens. Such is not confinement or punishment of insane citizens solely for violation of a criminal law, when because of insanity such a citizen may not under common law standards know right from wrong, but is, in effect, investing Federal Courts with chancery jurisdiction and providing a means within due process whereby the lawful objects of the Government may be protected from those criminally insane. I believe the power of the Congress so to do is to be found in Art. 1, Sec. 8, Cl. 18 of the Constitution, whereby Congress is authorized, "To make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers, and all other Powers vested by this Constitution in the Government of the United States, or in any Department or Officer thereof."

By Sections 4244 and 4246, supra, Congress has provided for hearing after arrest and before trial of citizens "charged with an offense against the United States" to determine their present insanity and ability to stand trial. If determined by the Court that the accused "is or was mentally incompetent, the court may commit the accused * * * until the accused shall be mentally competent to stand trial or until the * * * charges against him are disposed of according to law." This is the first provision so made by the Congress for the commitment of insane persons charged with a crime. Prior to the enactment of said sections, it was universally assumed that the Federal Courts had such jurisdiction stemming from the common law. Cf. Youtsey v. United States, 6 Cir., 97 F. 937. Such was not a valid legal concept because, as above stated, there is no common law jurisdiction resident in the Federal Courts. However, the fact that such was accepted criminal procedure, at common law, it affords a premise for the construction of Art. 1, Sec. 8, Cl. 18 of the Constitution, so as to give Congress power to adopt that procedure as a provision of Federal Criminal Procedure within the concept of due process of law. Cf. Ex parte Grossman, 267 U.S. 87, 45 S.Ct. 332, 69 L.Ed. 527.

In the last portion of Section 4246, supra, it is provided that if a hearing is held as provided in Section 4244, and at such hearing the Court "shall determine that the conditions specified in * * * section 4247 exist [then], the commitment shall be governed by section 4248". What are the conditions specified in Section 4247? "That if released he will probably endanger the safety of the officers, the property, or other interests of the United States and that suitable arrangements for the custody and care of the prisoner are not otherwise available". In such a setting, United States District Courts are now given jurisdiction to commit insane persons accused of crime "until the sanity or mental competency of the person shall be restored or until the mental condition of the person is so improved that if he be released he will not endanger the safety of the officers, the property, or other interests of the United States, or until suitable arrangements have been made for the custody and care of the prisoner by the State of his residence, whichever * * * shall first occur." Section 4248, supra.

For Congress to so enact as a part of the Federal Criminal Code is not for the Federal Government to assume a position of *parens patriae* toward insane persons. All that the Congress has thereby provided for is protection of the general welfare of the United States against the acts of criminally insane persons; a power which I believe the Congress has that cannot be of doubtful constitutionality.

█ Petitioner has been in the custody of respondent for a period of six months. It now appears that he probably never will

be mentally capable of standing trial on the charges made against him. The Warden of the Medical Center is endeavoring to have the State of California take jurisdiction over petitioner. To date, the Warden's efforts in that behalf have been in vain. Unless petitioner alleges and establishes by competent evidence before this Court that the state of his domicile, California or Montana, will assume custody of him he is not entitled to presently be released from the Medical Center, so long as the charges made against him are not disposed of according to law, i. e. by a trial on the merits thereof or by way of dismissal, as he concedely is insane.

If the respondent is unable to get the State of California, or some other State wherein petitioner claims domicile, to assume custody of petitioner within a reasonable time, then that fact should be communicated to petitioner's committing court and a further hearing and determination held in that court as to whether "if released he (petitioner) will probably endanger the safety of the officers, the property, or other interests of the United States." In the status of petitioner, being one only accused of a Federal offense, the court in which such accusation is pending is the only forum that can make that determination within the scheme established by the Congress for "mental defectives".

Petitioner's application for a writ of habeas corpus is denied because no facts are therein alleged that would authorize the issuance of a writ of habeas corpus thereon.

It is so ordered.