**Corinne H. LYONS and William F. Lyons, Plaintiffs,**

v.

**Mildred D. BORDEN, Defendant.**

Civ. No. 1815.

United States District Court
D. Hawaii.

Dec. 29, 1961.

A. William Barlow, Honolulu, Hawaii, for plaintiff.

Smith, Wild, Beebe & Cades, Honolulu, Hawaii, of counsel, by Daral G. Conklin, Honolulu, Hawaii, for defendant.

TAVARES, District Judge.

In this case the court previously rendered an oral decision, finding that the plaintiffs in this action, which is based on alleged diversity of citizenship, had failed to sustain the burden of proof as to their alleged Ohio citizenship, and that therefore the action must be dismissed for lack of jurisdiction.

The Complaint (paragraph I) alleges that "Plaintiffs reside at Coshocton, Ohio. Defendant resides at 3631 Likini Street, City and County of Honolulu, State of Hawaii." [1] The oral decision stated that the evidence left the court in a state of uncertainty as to whether the plaintiffs were citizens of Hawaii or citizens of Ohio. This uncertainty arose from the fact that the plaintiffs, in connection with the elections for the newly-to-be-admitted State of Hawaii, had registered to vote, and had voted in 1959, in the Hawaii elections. In connection with such registration each of the plaintiffs had signed an affidavit under oath stating that he or she had resided in the Territory of Hawaii for more than one year previously and was not here by reason of being in the military forces of the United States.[2]

1. See last paragraph of this decision as to insufficiency of allegations as to diversity of citizenship.

2. The Hawaiian Organic Act, § 63, 48 U.S. C.A. § 619, then in force provided:

"That no person shall be allowed to vote who is in the Territory by reason of being in the Army or Navy or by reason of being attached to troops in the service of the United States."

The Plaintiff, William F. Lyons, is, and at all times mentioned in this decision was, a physician in the service of the United States Navy, having the present rank of Captain. He has been living in the City and County of Honolulu, Territory and State of Hawaii, by virtue of military orders, since at least 1957. He had been assigned government housing on a military reservation, when he arrived, but had found it insufficient and had therefore, in 1957, purchased a home in the City and County off the reservation, which home he and his wife still own. They also owned real property purchased as an investment, on the Island of Hawaii, at the time of their registration to vote in Hawaii. Both Captain and Mrs. Lyons testified that the home in Hawaii had been purchased simply because the government housing was too small for their family of husband, wife, and four children, and because they felt it was a good investment; that in purchasing the home they had had no intention of changing their domicile from the State of Ohio, which they both still claim as their domicile.

Captain Lyons had owned for many years, and still owns, a part interest in a home inherited by him and his brothers and sisters from their father, and still lived in by their mother, and in which for some years after getting out of college Captain Lyons and his wife had resided. Captain and Mrs. Lyons also testified that this Ohio home was still considered by them as their domicile and permanent address, that it was so stated in Captain Lyons' Navy record, which had never been changed, and that Captain Lyons had numerous close ties and associations with relatives and freinds, both socially and professionally, in Ohio, he being licensed to practice in the State of Ohio and nowhere else, all of which induced him at all times to intend to retain his Ohio domicile. All of these circumstances were advanced as reasons tending to indicate that he could not have intended, and did not intend, to change his alleged pre-existing Ohio domicile by reason of the registration to vote, and

voting, in Hawaii in 1959. Plaintiffs also testified that they had previously, some years before, similarly registered to vote, and voted, in Florida while they were stationed there. Both plaintiffs testified that neither in the Florida situation nor in the Hawaii situation had they intended to, or understood, that thereby they were effecting, or might be effecting, a change of their domicile.

The court finds that the evidence is sufficient to establish that, after having voted in Florida, the plaintiffs resided in Ohio in a manner sufficient to restore domicile. Among other things, Captain Lyons testified that he was in the habit of going to a conference on the mainland, at least once a year and that on the way would usually take off a few days to visit his above mentioned home in Ohio, remaining there not more than a few days at a time. The court therefore starts out with the assumption that Ohio was the domicile of the plaintiffs immediately before the registration to vote in Hawaii. The question then remains as to whether, by their overt acts, the plaintiffs became domiciled in Hawaii, regardless of their stated subjective intention not to become so domiciled. In this connection, it is contended by the defendant's counsel that regardless of any such subjective intent, overt acts, namely registration to vote and voting in Hawaii, were committed by the plaintiffs, which, ipso facto, resulted in a change of domicile, notwithstanding any possible subjective intent to the contrary.

The plaintiffs both made a favorable impression on the witness stand by their candidness. The court at first found it difficult to believe that people with plaintiffs' standing, education and military experience, including a great deal of traveling to and sojourning in different jurisdictions, would not realize that, in order to vote in Hawaii, they would have to claim domicile or citizenship in Hawaii. Their counsel contended that they didn't understand that residence for purposes of voting must be the same as domicile, and that therefore they were under the bona fide impression that they

could remain domiciled in Ohio and still claim a type of residence in Hawaii for local voting purposes that would not effect a change of their Ohio domicile and citizenship.

A student in an American state generally learns in his prescribed studies the necessity for a permanent residence and citizenship in a state in order to be entitled to vote. The history of these plaintiffs in the military service, together with these considerations of their intelligence and education, and the general information that would ordinarily be picked up by military personnel being assigned from place to place, would tend to indicate that they ought to have known something about the requirements for, and significance of, domicile. It was these considerations which caused the court, in its earlier oral opinion, to find that the evidence of domicile was in such an uncertain state that plaintiffs had failed to sustain the burden of proving their domicile in Ohio for jurisdictional purposes. However, after reconsidering the matter in the light of all the evidence, including that offered upon the reopening granted upon plaintiffs' motion, and especially in the light of the conflicting decisions of various courts, this court feels that a different ruling is now called for.

A careful study of the authorities indicates that even the solemn acts of registering under oath to vote, and voting, in a new jurisdiction, do not have the conclusive effect—do not constitute the absolute estoppel to claim retention of the previous domicile—contended for by counsel for the defendant. See for instance Agassiz v. Trefry (1st Cir., 1920) 266 F. 8; Glaspell v. Davis (D.C. Ore.1942) 2 F.R.D. 301; Shreveport Long Leaf Lumber Co. v. Wilson (D.C.La. 1941) 38 F.Supp. 629; Messick v. Southern Pennsylvania Bus Co. (D.C.Pa.1945) 59 F.Supp. 799. The two cases found that contain language appearing to hold to the contrary, namely McHaney v. Cunningham (D.C.La.1925) 4 F.2d 725 and De Marcos v. Overholser (1941), 74 App.D.C. 42, 122 F.2d 16, appear to be distinguishable. In the McHaney case,

the plaintiff, a native of Arkansas and an attorney at law and teacher, had migrated to Louisiana where he was employed, and both he and his wife had lived there for some time and had registered to vote and voted in Louisiana. Later he tried to establish a *new domicile* in a *different place in Arkansas* from the town of his original domicile, but the court held that, by reason of his having returned to Louisiana to fulfill a previous oral teaching contract from which he had tried unsuccessfully to be released in order to resume law practice in Arkansas, he had not abandoned the Louisiana domicile which the court held he had acquired under the facts, including the voting in Louisiana.

The Overholser case was not a diversity civil action, but a habeas corpus case brought by a convict confined in a mental institution. The lower court had found that petitioner, born in Tennessee, had not, since *1902* (almost 40 yrs.), maintained a home there or evidenced any intention of returning to that state; that he had resided in and exercised the right of franchise in various states, including Kansas, Illinois and Montana, and at other times had lived in various other parts of the world; and that he was "not now" a legal resident of Tennessee. While residing in Canada, petitioner had been convicted of manslaughter and sentenced to life imprisonment. Subsequently he had been found to be insane while confined in prison and had been transferred to an institution for the insane in Canada. Thereafter, he was transferred by the Dominion of Canada to the United States pursuant to a Federal statute, 24 U.S.C.A. § 196a. That statute authorized a transfer to St. Elizabeth's hospital, in the District of Columbia, for treatment, of all American citizens legally adjudged insane in Canada whose legal residence in any of the States, Territories, or the District of Columbia it was impossible to establish. It further authorized a transfer thereafter to the patient's place of residence, if and when ascertained. Petitioner was placed in St. Elizabeth's Hos-

pital. He filed a petition for a writ of habeas corpus to require the United States to transfer him to Tennessee, his claimed legal residence. In sustaining the lower court's findings and refusal to order him transferred, the appellate court said:

"We think enough appears to justify the conclusion of the lower court that, assuming petitioner had a legal residence at one time in Tennessee, he had since abandoned it and established new ones elsewhere. Petitioner could *not legally* have voted in the various states in which it appears he did vote, except by abandonment of his former residence and the adoption of the new one in which he exercised this right, and having on these different occasions elected to represent himself as a citizen of these different states, *he will not now be heard to say* that there is *no evidence* that he ever had an intention of abandoning his former domicile." (122 F.2d 17; emphasis added).

Besides the well-nigh conclusive effect given by appellate courts to a lower court's decision on the facts, and other distinguishing circumstances above noted, there is the further significant circumstance in this Overholser case that petitioner was a convict and an insane person, whose testimony as to subjective intention could be given little, if any, weight.

█ The fact that judges skilled in the law can find that registration to vote and voting in a new jurisdiction are not conclusive in establishing domicile in the new jurisdiction, has caused this court to re-examine its thinking and to find it not so incredible as was first thought, that lay persons, even of the standing, intelligence, education, and experience of plaintiffs, but without a lawyer's background, could believe that they could register to vote and vote in Hawaii and still retain their previous Ohio domicile.

Once we abandon the theory of conclusiveness of registering to vote and voting in Hawaii by plaintiffs, we then come to a consideration of the weight of the evidence, including such registration and voting in Hawaii and the evidence as to original domicile in Ohio and subjective intent, together with overt acts in corroboration thereof, found in this case. The plaintiffs, in the first Ohio election following that at which they voted in Hawaii, voted in Ohio by absentee ballot. True, they admitted that they did not tell the Ohio authorities of having previously voted in Hawaii, but such absentee voting is an overt act evidencing a continued claim of the original Ohio domicile by plaintiffs. Add to this the presumption of continuance of the old domicile, which seems to be given great weight by many of the authorities, 28 C.J.S. Domicile § 16, p. 35, plus the very positive testimony of the plaintiffs themselves, which again seems to be given great significance by many authorities, together with other testimony in the case which the court finds credible, and the court now feels that the plaintiffs have established by a preponderance of the evidence, the continuance of their original Ohio domicile, notwithstanding their illegal acts in voting in Hawaii when not in fact domiciled therein.

For the foregoing reasons, the suggestion in the nature of a motion to dismiss for lack of jurisdiction by reason of alleged lack of diversity of citizenship, is denied.

█ However, in view of the decision in Mantin v. Broadcast Music, Inc. (9 Cir., 1957) 244 F.2d 204, the allegations as to diversity quoted ante are fatally defective, since *residence* only and *not citizenship* is alleged. The Complaint will therefore be dismissed unless, within ten (10) days from the filing of this decision, an amended Complaint with proper allegations as to diversity of citizenship is filed.